María Cristina Torres, menor de edad, representada por sus padres con patria potestad, Eulalio Torres y Sylveria Torres, demandantes, recurrentes y recurridos, *v.* Autoridad de las Fuentes Fluviales de Puerto Rico, demandada, recurrida y recurrente.

*Números:* R-63-293; R-63-295       *Resueltos:* 20 de abril de 1967

*Héctor Lugo Bougal,* abogado de los recurrentes y recurridos; *José Antonio Arabía,* abogado de la recurrida y recurrente.

Sala Segunda integrada por el Juez Asociado Señor. Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos, Santana Becerra y Dávila.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

Ambos recursos se interpusieron contra la misma sentencia dictada por la Sala de Ponce del Tribunal Superior en acción de daños por las lesiones que sufrió una niña de 12 años de edad en el patio de la escuela a la cual asistía, donde cursaba el quinto grado.

El accidente ocurrió el 5 de abril de 1962. En septiembre de 1960 la Autoridad demandada depositó en una parcela vacía perteneciente al gobierno una cantidad de postes eléctricos para un proyecto de alumbrado en el sector. Esta parcela estaba situada en sitio cercano a la escuelita rural de la niña. Al terminarse el proyecto allá por julio de 1961, la Autoridad dejó allí sin utilizar un número de dichos postes.

La parcela le fue posteriormente cedida a Juan Abad Rodríguez.

Declarando como testigo de la demandada, Abad Rodríguez manifestó que como ocupante de la parcela insistió mandando aviso a la Autoridad más de una vez, en que removieran los postes de su predio, sin que ésta lo hiciera. Por su cuenta entonces él los sacó de allí y los colocó al frente en otro predio del gobierno, desde donde con el tiempo se deslizaron loma abajo quedando finalmente regados en el patio de la escuela en los alrededores de los dos salones de clase.

Desde que los postes no utilizados quedaron en la parcela de Abad Rodríguez y en todo tiempo hasta que ocurrió el accidente en abril 5 de 1962, los mismos estuvieron abandonados por la demandada sin que los atendiera, vigilara o cuidara de ellos. Un testigo de la demandada a cargo de su supervisión declaró que en momento alguno fue a ver si estaban en su sitio. Otro testigo traído por la demandada declaró que había advertido a empleados de ésta sobre el peligro de aquellos postes para los niños en el patio de la escuela y sitio de juego, cosa que observaba con frecuencia desde su casa allí cerca. Después del accidente los postes se removieron. Fotografías admitidas en evidencia demuestran que habían postes en el terreno, en parte entre la hierba. La niña declaró que eran negros, en un terreno color *"brown"*. Dos de estos postes estaban parcialmente sobre un caminito que era el acceso del frente a los dos salones de clase. Por él, según prueba no disputada, pasaban los niños para ir y venir de su escuelita. Los dos postes sobre la vereda estaban casi pegados uno al otro, según las fotografías, aunque en forma escalonada; uno se levantaba más alto que el otro.

El día del accidente la niña estaba en el recreo y junto a otras compañeras iba bastante ligero "corría leve" a tomar agua a otra escuela situada al frente, antes de que tocara la campana de volver a entrar. Un pie se le metió entre los dos postes y cayó. "Yo traté de que no se me fuera el pie adentro,

pero siempre se me fue". Fue necesario que otras personas la levantaran y gritaba mucho de dolor. La caída produjo una fractura de su pierna derecha que tuvo unos tres meses enyesada.

El testimonio médico fue al efecto de que la niña tenía una deformidad por angulación lateral del tercio distal de la pierna derecha, tobillo y pie; limitación de la dorsiflexión del tobillo derecho de 15 grados; limitación de la flexión plantar en 20 grados; limitación casi total, de la inversión del tobillo derecho; la radiografía demostraba una fractura consolidada del tercio distal de la tibia y peroné derecho cicatrizada con una angulación lateral del fragmento distal que mide 10 grados y que se refleja en la superficie articular del tobillo causando una inclinación anormal que interfiere con la función normal del mismo. Concluyó el facultativo que existe una incapacidad parcial permanente como consecuencia directa de la fractura evaluada en la pérdida de un 15% de las funciones fisiológicas de la pierna derecha por debajo de la rodilla. Aunque la condición podría mejorar algo, la incapacidad parcial será permanente, debido a que la relación de la superficie articular de la tibia está inclinada con relación al eje longitudinal de la misma. La niña cojeaba y se apoyaba en un bastón.

En sus conclusiones de derecho expresó la Sala sentenciadora que la Autoridad fue negligente al no ejercer el grado de vigilancia e inspección de esos postes que las circunstancias demandaban, y le imputó dicha negligencia en grado de una tercera parte de la culpa. Concluyó que Juan Abad Rodríguez había incurrido en otra tercera parte de la culpa, y que la niña fue culpable del accidente en el tercio restante. Fijó los daños en la suma de $9,000 y acorde con sus conclusiones, dictó sentencia condenando a la Autoridad a pagarle $3,000 a la niña, y $1,000 a la madre por los sufrimientos y angustias morales.

■ Antes de considerar si hubo o no concurrencia de culpa por parte de la niña con la parte contraria en el pleito, o sea la Autoridad demandada, se cometió un error obvio que amerita ser corregido. La Sala hizo recaer el peso de la culpa que adjudicó a Abad Rodríguez sobre la niña y en descargo de la Autoridad. Como cuestión económica, según se dictó la sentencia, ella está pagando no sólo por la culpa que se le imputó sino también por la culpa de Abad. Abad nunca estuvo en el pleito. No fue oído ni vencido en juicio, por lo que la adjudicación de culpa hecha en su contra en nada le obliga, ni con la demandante para exigirle ésta compensación en el pleito, ni con la Autoridad para responderle a ésta. Abad Rodríguez no fue hecho parte codemandada junto a la Autoridad. De haberlo sido, acorde con las conclusiones de la Sala él le hubiera respondido a la demandante de la totalidad de la compensación como un co-causante con la Autoridad del daño, de igual modo que la Autoridad también le respondía de la totalidad como co-causante, excepto en uno y otro caso, en aquella parte que se atribuyera a la culpa concurrente de la niña. La obligación de dos o más deudores por sentencia en caso de responsabilidad como co-causantes de un daño es solidaria. *Rivera* v. *Great Am. Indemnity Co.*, 70 D.P.R. 825 (1950); *Prado* v. *Quiñones*, 78 D.P.R. 322 (1955). Cf.: *García* v. *Gobierno de la Capital*, 72 D.P.R. 138 (1951); *Ginés Meléndez* v. *Autoridad de Acueductos*, 86 D.P.R. 518 (1962); *Cortijo Walker* v. *A.F.F.*, 91 D.P.R. 574 (1964); *Vda. de Andino* v. *A.F.F.*, 93 D.P.R. 170 (1966).

No siendo Abad Rodríguez parte codemandada, la Autoridad, si quería defenderse de su culpa o aprovecharse de ella, debió haberlo hecho tercero demandado, bajo el mecanismo que ofrece la Regla 12.1 de las de Procedimiento Civil. (¹)

---

(¹) Regla 12.1: "En cualquier momento después de comenzado el pleito, el demandado podrá como demandante contra tercero notificar un emplaza-

Asumiendo que la niña fuera culpable en proporción a una tercera parte del daño como resolvió la Sala, acorde con lo anteriormente expuesto tendría derecho, contra la Autoridad, a una sentencia de $6,000, no de $3,000.

██ Resta ver si la niña fue culpable. Dispone el Art. 1802 del Código Civil, ed. 1930, según fue enmendado por la Ley Núm. 28 de 9 de junio de 1956, que "La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización." La ley demanda *imprudencia*. Bajo los hechos y circunstancias en el récord no puede decirse que la niña fuera imprudente. Prudencia es saber distinguir lo que es bueno o malo para seguirlo o huir de ello; es discernimiento, cordura—según nos lo dice Casares. *Diccionario Ideológico*, (1963)—. Un imprudente, según Cabanellas en su *Diccionario de Derecho Usual* (1953), es un negligente, un imprevisor, quien crea un grave riesgo para sí o para otro, sin deber, necesidad ni beneficio. En el concepto ideológico anglosajón, significa la calidad de ser imprudente, falta de circunspección o el debido miramiento a las consecuencias, falto de buen juicio. *Webster's Third New Int. Dictionary* (1961).

La niña declaró que la maestra les había dicho que no jugaran con los postes, y hay mención de que los muchachos "bregaban" con los postes en la lomita.

██ Al ocurrir el accidente la niña no estaba jugando en los postes. Éstos se encontraban entorpeciendo el paso del caminito o vereda que servía de acceso de entrada y salida a los salones de clase. Por allí tenían que pasar y pasaban todos los niños. Lo que le ocurrió fue un hecho más tarde o más temprano inevitable dada la condición creada, y pudo pasarle a ella y a cualquier otro niño y a cualquier

---

miento y demanda a una persona que no sea parte en el pleito *y que le sea o pueda serle responsable por toda o parte* de la reclamación del demandante".

otra persona, un adulto inclusive, en las circunstancias dichas. La conclusión debe ser que la niña no incurrió en culpa concurrente con la demandada.

*A tenor de lo expuesto se modifica la sentencia objeto de revisión para que condene a la Autoridad de las Fuentes Fluviales a satisfacer a la demandante la compensación de $9,000, y $1,000 a la madre, y así modificada se confirmará.*