MONSERRATE A. ARROYO y OTROS, demandantes y recurridos, *v.* HOSPITAL LA CONCEPCIÓN y OTROS, demandados y peticionarios.

*Número:* CE-89-365        *Resuelto:* 5 de junio de 1992

*Fernando E. Betancourt Medina,* abogado de los peticiona-
rios; *Héctor Lugo Bougal,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del
Tribunal.

# I

El 27 de diciembre de 1984 Monserrate A. Arroyo *et al.* presentaron en el Tribunal Superior, Sala de Mayagüez, una acción de daños y perjuicios contra el Hospital La Concepción *et al.* Alegaron que la muerte de Alejandro Vega Rosado acaecida el 28 de diciembre de 1983 se debió a la negligencia de esa institución, ya que "los médicos y demás funcionarios de dicha dependencia no le brindaron atención alguna ... ". Apéndice, pág. 4. Posteriormente, el tribunal de instancia mediante sentencia parcial desestimó la acción contra la *Administración del Fondo de Compensación del Paciente* al dictaminar que no era aseguradora del Hospital.

Casi cuatro (4) años después, los demandantes Arroyo *et al.* solicitaron una autorización para enmendar la demanda e incluir como codemandados adicionales a la Compañía Insular de Seguros (enmienda previamente ya aceptada), así como a los Dres. Carlos Ramírez Alustiza y Francisco Ball Rosa, y sus respectivas aseguradoras denominadas Equis (X) y Zeta (Z) por desconocerse sus nombres. El 29 de septiembre de 1988, el tribunal concedió "la enmienda *a los solos efectos* de traer al litigio a la Corporación Insular de Seguros". El 27 de diciembre de 1988, durante una conferencia con antelación al juicio, el tribunal reconsideró y permitió toda la enmienda.

Los doctores Ramírez Alustiza y Ball Rosa solicitaron sin éxito la desestimación por el fundamento de prescripción. El ilustrado foro razonó que "[l]os demandantes alegan que el fallecimiento de su causante se debió a la impericia en el tratamiento [médico] recibido" y solicitan en su demanda enmendada el "pago solidario" de las sumas que se reclaman, por lo que "se está reclamando responsabilidad *solidaria* a los codemandados en su carácter de alegados cocausantes del daño. En estas circunstancias, el término prescriptivo en cuanto a dichas partes quedó

interrumpido con la presentación oportuna de la demanda original .... *Esta conclusión, sin embargo, es sin perjuicio de que dicha defensa se preserve para el juicio, en caso de que este Tribunal llegara a determinar en su día que no existe solidaridad entre las partes*". (Énfasis suplido y en el original.) Apéndice, págs. 1–2.

Inconforme, a petición del doctor Ball Rosa, revisamos.

## II

En *Ramos v. Caparra Dairy, Inc.*, 116 D.P.R. 60, 62–63 (1985), definimos la solidaridad como " '[l]a pluralidad subjetiva ... en vez de producir la división de la relación obligatoria en créditos o deudas separados, permite por el contrario a uno solo de los acreedores exigir el total importe del crédito, y obliga a cada uno de los deudores a, pagar la totalidad de la deuda'. D. Espín Cánovas, *Manual de Derecho Civil Español*, 2da ed., Madrid, Ed. Rev. Der. Privado, 1961, Vol. III, págs. 121–122". En términos simples, la obligación solidaria es aquella en la que concurren varios acreedores (solidaridad activa) o varios deudores (solidaridad pasiva), o varios acreedores y al mismo tiempo varios deudores (solidaridad mixta), y en que cada acreedor tiene derecho a pedir, y cada deudor tiene la obligación o deber de realizar íntegramente, la prestación debida. J. Castán Tobeñas, *Derecho Civil español, común y foral*, 10ma ed., Madrid, Ed. Reus, 1967, T. III, pág. 107.

Al respecto, afirma Puig Brutau que "en la solidaridad activa o con pluralidad de acreedores, cada uno de éstos puede exigir para sí el contenido íntegro de la prestación debida por el único deudor, de modo que con el cumplimiento a favor de cualquiera de los acreedores, dicho deudor único queda liberado frente a todos. De manera equivalente, en la solidaridad pasiva (pluralidad de deudores), el acreedor único puede exigir íntegramente la prestación de cualquiera de los obligados, y cuando mediante la pres-

tación de uno de ellos haya quedado satisfecho el crédito, todos ellos quedarán liberados frente al acreedor, porque se habría extinguido la única obligación existente. La pluralidad de deudores no ha significado, en tal caso, la posibilidad de recibir varias prestaciones, sino la posibilidad de recibir la única prestación debida de cualquiera de las personas obligadas, o de que en definitiva quede satisfecho el interés del acreedor en la prestación única a base de la obligación que pesa sobre varios deudores (por ejemplo, si el primer deudor solidario demandado resulta insolvente o solvente sólo en parte). Cada uno de los deudores debe, pues, toda la prestación, pero el acreedor sólo tiene derecho a recibirla una sola vez, sea de un solo deudor (si ha bastado para el cumplimiento de la prestación debida) o de varios". (Escolio omitido.) J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra ed., Barcelona, Ed. Bosch, 1985, T. I, Vol. 2, págs. 147–148. Véase, además, M. Albaladejo, *Derecho Civil*, Barcelona, Librería Bosch, 1970, T. II, Vol. 1, pág. 54.

## III

El concepto de "solidaridad" ha sido blanco de intensos debates en torno a cuándo una obligación goza ese carácter. Nos dice Borrel Macía que "[e]l artículo 1.137 del Código civil [Art. 1090 de nuestro Código Civil, 31 L.P.R.A. sec. 3101] ... determina que sólo existirá solidaridad en una obligación cuando ésta expresamente lo determina, constituyéndose con el carácter del tal; y añade, el 1.138 [Art. 1091 de nuestro Código Civil, 31 L.P.R.A. sec. 3102], que si del texto de la obligación no resulta otra cosa, el crédito o la deuda se presumirá dividido en tantas partes iguales como acreedores o deudores haya, reputándose créditos o deudas distintos unos de otros". A. Borrell Macía, *Responsabilidades derivadas de culpa extracontractual civil*, 2da ed., Barcelona, Ed. Bosch, 1958, pág. 318. "El he-

cho de considerarse como excepción en el régimen contractual la solidaridad en las obligaciones, tiene su razón de ser. La solidaridad entre los deudores agrava de una manera evidente la carga que la deuda representa. El hecho de que pueda ser reclamada toda a uno de los deudores y que éste después se vea precisado a ejercitar unas acciones para resarcirse de lo que ha pagado de más, con la posibilidad de que, por insolvencia de los coobligados, tenga que satisfacer la deuda propia y la ajena de una manera definitiva, *hace preciso que expresamente se manifieste, al convenir la obligación, que la responsabilidad será de tal grado.* No puede presumirse que el que libremente ha contratado, sin manifestarlo, se haya querido comprometer a más de lo que consta en el convenio."(¹) (Énfasis suplido.) Borrell Macía, *op. cit.*, págs. 318–319.

Ahora bien, en materia extracontractual o ámbito de la culpa aquiliana, "los anteriores razonamientos ... *no* tienen ... razón de ser: no es la voluntad de las partes la que crea la obligación, *sino que ella surge de una manera unilateral*, en virtud de un acto realizado libremente por una persona, en relación con otra; [y] *la ley da eficacia y sanciona la obligación natural de reparar los perjuicios causados*". (Énfasis suplido.) Borrell Macía, *op. cit.*, pág. 319.(²) Recordemos la regla general sobre este punto: "El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causa-

---

(¹) Añade el mismo autor que "[s]i se trata de solidaridad entre acreedores, tampoco es lógico que se presuma; porque, si los actos realizados por uno perjudican a los demás, si el hecho de cobrar uno de ellos deja sin acción para reclamar el importe del crédito a los demás acreedores, es evidente que, sin especificarse de una manera clara, no ha existido intención de aceptar solidariamente el crédito; y, por tanto, no puede la ley reconocer tal género de obligación sin un pacto expreso o sin que del contexto del contrato se desprenda de una manera clara y evidente". A. Borrell Macía, *Responsabilidades derivadas de culpa extracontractual civil*, 2da ed., Barcelona, Ed. Bosch, 1958, pág. 319.

(²) En este caso nos encontramos ante una obligación derivada de la ley. J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra ed., Barcelona, Ed. Bosch, 1985, T. I, Vol. 2, pág. 159.

do", Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141. Así pues, "[au]n cuando el mandato estatutario contenido en el Art. 1802 de nuestro Código Civil ... nada dice expresamente que permita establecer directamente la solidaridad de los varios partícipes en una actuación coordinada, o en una en que actuando interdependientemente producen un daño único e indivisible, *la doctrina ha interpretado que lo expuesto por dicho precepto para el singular también aplica al plural, de lo que inescapablemente fluye que el ordenamiento implícitamente reconoce que la responsabilidad debe considerarse solidaria cuando sean dos o más los culpables de un daño de la naturaleza indicada.* Se trata, pues, de un caso de *solidaridad legal*.(³) Esta norma ha sido objeto de debate durante el último siglo. Sin embargo, al presente la misma es sostenida por una amplísima mayoría de la doctrina y la jurisprudencia".(⁴) (Énfasis en el original suprimido y énfasis suplido.) H.M. Brau, *El término prescriptivo y su interrupción en acciones en daños por responsabilidad extracontractual solidaria en el Derecho puertorriqueño*, 44 (Núm. 2) Rev. C. Abo. P.R. 203, 204–205 (1983).

---

(³) La solidaridad existe por voluntad de los interesados o *por disposición de ley*. Observa Puig Peña que la solidaridad *activa* se da cuando las partes la han establecido. La *pasiva*, en cambio, puede derivarse de la voluntad de las partes (manifestada en contrato o testamento) y de *precepto legal*. Puig Brutau, *op. cit.*, págs. 154–155.

(⁴) Sobre este particular, J. Santos Briz —citado por Brau— reitera que en cuanto a los "actos ilícitos civiles la norma a aplicar es ·el Art. 1902 del Código Civil español correspondiente al Art. 1802 de nuestro Código, y que la posición doctrinaria actual es a ver en esa norma una declaración (estatutaria) de solidaridad entre los varios responsables de un acto ilícito, salvo que algún precepto inequívoco lo impida en referencia a alguna relación particular. Señala Santos Briz que despu[é]s de una fase excesivamente apegada a la norma del Art. 1137 del Código Civil español (Art. 1090 del nuestro) sobre la necesidad de pactar expresamente la solidaridad, la jurisprudencia sanciona la solidaridad de los responsables de un acto ilícito civil no sólo cuando actúan en la misma línea de coautoría (corresponsabilidad directa), sino cuando es la empresa o patrono quien responde por los actos de sus dependientes. Véase J. Santos Briz, *Derecho Civil*, Madrid, Ed. Rev. Der. Privado, 1973, págs. 141 y 142 ...". (Énfasis suprimido.) H.M. Brau, *El término prescriptivo y su interrupción en acciones en daños por responsabiliblad extracontractual solidaria en el Derecho puertorriqueño*, 44 (Núm. 2) Rev. C. Abo. P.R. 203, 206 (1983).

604

■ Esta responsabilidad solidaria, impuesta a los co-causantes de un perjuicio, a la luz del Art. 1802 de nuestro Código Civil, *supra*, "protege con más eficacia al perjudicado por un acto ilícito, aunque se trate de ilicitud civil, y que, como señala Larez, la solidaridad ha de imponerse en el caso que consideramos porque cada uno de los que han cooperado o actuado conjuntamente en el acto ilícito son responsables de la totalidad del daño producido". (Escolio omitido.) Puig Brutau, *op. cit.*, pág. 160, citando a K. Larez, *Derecho de Obligaciones*, Madrid, Ed. Rev. Der. Privado, 1959, T. I, pág. 501. Como muy bien señala Puig Brutau al comentar críticamente a Albaladejo —uno de los pocos que reitera que el Art. 1090 de nuestro Código Civil, *supra*, aplica a todo tipo de obligaciones— "el riesgo de la falta de solidaridad *es que el lesionado no llegue a recibir la reparación íntegra si cualquiera de los causantes es insolvente*, pues bastaría en la solidaridad que fuese solvente alguno de ellos... [teniendo esta norma como objeto el] aumentar la garantía normal del que ha sufrido el daño cuando no ha elegido a quienes se lo han causado, sino que han invadido ilícitamente su esfera de intereses". (Énfasis en el original suprimido y énfasis suplido.) Puig Brutau, *op. cit.*, págs. 160–161.

■ Más allá de los debates doctrinales y judiciales, hoy día "la conclusión, casi universal, *es la existencia de solidaridad cuando varias personas intervienen o cooperan en la realización de un daño.* En tales circunstancias cada uno queda obligado personalmente por razón de su propia culpa. F. Soto Nieto, *La responsabilidad civil derivada del ilícito culposo*, Madrid, Ed. Montecorvo, 1982, págs. 81–86". *Sánchez Rodríguez v. López Jiménez*, 118 D.P.R. 701, 705–706 (1987). Nuestra jurisprudencia admite que la responsabilidad resultante de un acto ilícito civil es solidaria, e incluso afirma que se trata de una doctrina ya consolidada. *Sánchez Rodríguez v. López Jiménez*, supra;

*Vega v. Adm. Servs. Médicos*, 117 D.P.R. 138 (1986); *Ramos v. Caparra Dairy, Inc.*, supra; *Serralta v. Martínez Rivera*, 97 D.P.R. 466 (1969); *Torres v. A.F.F.*, 94 D.P.R. 314 (1967); *Torres v. A.M.A.*, 91 D.P.R. 714 (1965); *Rivera v. Great Am. Indemnity Co.*, 70 D.P.R. 825 (1950); *García v. Gobierno de la Capital*, 72 D.P.R. 138 (1951); *Cubano v. Jiménez, et al.*, 32 D.P.R. 167 (1923); *Cruz et al. v. Frau*, 31 D.P.R. 92 (1922).

Reiteramos, pues, la conclusión de Santos Briz: la orientación actual es ver en las disposiciones del Art. 1802 del Código Civil, *supra*, una declaración estatutaria de solidaridad entre los varios responsables del acto ilícito. J. Santos Briz, *Derecho Civil*, Madrid, Ed. Rev. Der. Privado, 1973, págs. 141–142. En consecuencia, lo dispuesto en el Art. 1090 del Código Civil, 31 L.P.R.A. sec. 3101, respecto a la no presunción de la solidaridad, *no aplica en materia de responsabilidad extracontractual*.

## IV

■ En torno a la prescripción, es necesario atender los Arts. 1094, 1868, 1873 y 1874 del Código Civil, 31 L.P.R.A. secs. 3105, 5298, 5303 y 5304.(⁵) La doctrina moderna, en especial la generalidad de la española, sostiene el carácter

---

(⁵) Disponen: "Cada uno de los acreedores solidarios puede hacer lo que sea útil a los demás, pero no lo que les sea perjudicial.

"Las acciones ejercitadas contra cualquiera de los deudores solidarios perjudicarán a todos éstos." Art. 1094 (31 L.P.R.A. sec. 3105).

"Prescriben por el transcurso de un (1) año: (1) La acción para recobrar o retener la posesión. (2) La acción para exigir la responsabilidad civil por injuria o calumnia, y por las obligaciones derivadas de la culpa o negligencia de que se trata en la sec. 5141 de este título desde que lo supo el agraviado." Art. 1868 (31 L.P.R.A. sec. 5298).

"La prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor." Art. 1873 (31 L.P.R.A. sec. 5303).

"La interrupción de la prescripción de acciones en las obligaciones solidarias aprovecha o perjudica por igual a todos los acreedores y deudores.

"Esta disposición rige igualmente respecto a los herederos del deudor en toda clase de obligaciones.

homogéneo de la solidaridad y rechaza las distinciones entre los distintos tipos que acoge la doctrina francesa. F. Soto Nieto, *La responsabilidad civil derivada del ilícito culposo*, Madrid, Ed. Montecorvo, 1982, págs. 73–74; Brau, *supra*, pág. 227. Según Valverde y Valverde, citado con autoridad por el profesor Brau, *supra*, pág. 227, "[l]a *distinción, pues, no es admitida en la ciencia moderna, la cual da a la solidaridad un carácter de homogeneidad que no autoriza distinguir ambas clases ...*". (Énfasis suplido.) C. Valverde y Valverde, *Tratado de Dereho Civil Español*, 4ta ed., Valladolid, Ed. Talleres Tipográficos "Cuesta", 1937, T. III, pág. 49 esc. 2.(⁶)

"De acuerdo con esta tendencia moderna, el código alemán rechaza o se opone a esa distinción. El código italiano, en su art. 1156, al hablar de la responsabilidad solidaria de las personas responsables de un delito o cuasi delito, no autoriza tampoco esta distinción de solidaridad perfecta e imperfecta[; y] *el español, aunque no habla de esta responsabilidad de hechos ilícitos, es incuestionable que en ningún precepto de él podrá fundarse semejante distinción, ya que habla siempre de una sola clase de solidaridad, y esto mismo viene a confirmar lo interpretado por analogía en la importante Sentencia del Supremo de 23 de diciembre de 1903.*" (Énfasis suplido.) Valverde y Valverde, *op. cit.*, pág. 49.

> Del estudio detenido de dichos artículos resulta que la interrupción de la prescripción de acciones se interpreta ... [atendiendo a la] naturaleza de las obligaciones. Así, en las solidarias aprovecha o perjudica conjuntamente a todos los acree-

---

"En las obligaciones mancomunadas, cuando el acreedor no reclame de uno de los deudores más que la parte que le corresponda, no se interrumpe por ello la prescripción respecto a los otros codeudores." Art. 1874 (31 L.P.R.A. sec. 5304).

(⁶) La ley de ninguna manera distingue dos especies de solidaridad. G. Marty, *Derecho Civil*, traducción de José M. Cajica, Jr., Puebla, México, Ed. José M. Cajica Jr., Vol. I, 1952, pág. 143. En España, el Código Civil no da base para distinguir dos clases de solidaridad. D. DeBuen y Battle, *Anotaciones a Colin y Capitant, curso elemental de Derecho Civil*, 3ra ed., Madrid, Ed. Reus, 1951, pág. 439.

dores y deudores; pero en las mancomunadas, si el acreedor reclama de uno de los deudores sólo la parte que le corresponde, entonces no rige la regla anterior ....

La razón de esta diferencia está en el precepto del artículo 1.141 [Art. 1094 de nuestro Código Civil, 31 L.P.R.A. sec. 3105] según el que cada uno de los acreedores solidarios puede hacer lo que sea útil a todos los demás, [y] ... que las acciones ejercitadas contra cualquiera de los deudores solidarios perjudicarán a todos ellos. [Así pues, a]l disponer ... el Código, en el art. 1.974 [Art. 1874 de nuestro Código Civil, 31 L.P.R.A. sec. 5304], la regla que hemos indicado con relación a las obligaciones [solidarias], no hace otra cosa que aplicar el principio establecido en aquel precepto a dicha regla de prescripción, como una consecuencia lógica del mismo, pues 'si la solidaridad —como dice un autor— implica conjunción de derechos y obligaciones, de acciones y de responsabilidades', es indudable que no puede ser ni resultar distinta la condición de los acreedores o de los deudores en dicha clase de obligaciones, cuando en beneficio de alguno de los primeros o en perjuicio de cualquiera de los segundos se hubiere interrumpido el lapso del tiempo de la prescripción, sino que todos han de quedar en las mismas circunstancias o en identidad de derechos .... De aquí que la interrupción de la prescripción producida por los actos de un acreedor solidario aproveche a todos los coacreedores, y de igual modo [esa interrupción realizada contra uno de los deudores solidarios afecta siempre a los deudores y] les hace partícipes a todos de las consecuencias jurídicas determinadas respecto de cualquiera de ellos. J.M. Manresa y Navarro, *Comentarios al Código Civil Español*, Madrid, Ed. Reus, 1951, T. XII, págs. 963–964.

En definitiva, "la posición predominante en la doctrina civilista es que nuestro Código Civil no da margen para justificar la división de la solidaridad acogida por la doctrina francesa, y, que por tanto, en nuestro ordenamiento no hay sino una sola solidaridad ... [y como consecuencia de lo antes dicho, son de aplicación a la solidaridad legal resultante del vínculo entre los cocausantes de un daño] todos los efectos legales que el ordenamiento y la doctrina asignan a la solidaridad —tanto los primarios como los secundarios—". Brau, *supra*, págs. 234–236.

■ *Resolvemos hoy "que la doctrina de la solidaridad*

*[consagrada en García v. Gobierno de la Capital, supra, ]* *permite traer a juicio instado a tiempo, a un [cocausante] solidario que originalmente no fue inclu[i]do en el pleito ...* a través de demanda contra tercero por parte del demandado origina[l o] por enmienda a la demanda por parte del demandante .... [Só]lo se requiere alegar bien y suficientemente en la demanda el hecho de que el nuevo demandado, o tercero demandado, según los casos, responde solidariamente por los daños reclamados con el demandado original, contra quien se *radicó demanda* dentro del término prescriptivo dispuesto por el ordenamiento ... ". (Énfasis suplido.) Brau, *supra*, pág. 243.

Esta solución descansa en los más básicos pilares de justicia y equidad. Abona a la economía procesal y está fundada en los preceptos de nuestro Código Civil. La norma hoy adoptada alcanza el mejor equilibrio entre todos los intereses.

Por los fundamentos expuestos, *se dictará sentencia confirmatoria.*

El Juez Asociado Señor Rebollo López disintió sin opinión escrita. El Juez Asociado Señor Hernández Denton emitió una opinión disidente. El Juez Asociado Señor Fuster Berlingeri no intervino.

— O —

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton.

Por entender que en el caso de autos la situación factual requiere que no se aplique con automatismo la doctrina de solidaridad entre cocausantes de un daño, disentimos.

Este Tribunal debió aprovechar esta coyuntura para reevaluar las consecuencias de esta normativa sobre nuestro derecho privado y, simultáneamente, examinar con de-

tenimiento la *posible aplicabilidad* en Puerto Rico de la doctrina francesa de obligación *in solidum*, a la luz de un estudio comparado de los preceptos del Art. 1090 del Código Civil, 31 L.P.R.A. sec. 3101, y las disposiciones de códigos análogos en países de tradición civilista. "La idea de la obligación *in solidum* se basa en que en determinados casos de pluralidad de deudores, aunque cada uno de ellos responda por entero, su responsabilidad es autónoma de las de los otros, ya que el vínculo del que la misma deriva es un vínculo independiente, que ha nacido por sí solo." (Énfasis en el original y escolio omitido.) A.C. Montes, *Mancomunidad o solidaridad en la responsabilidad plural por acto ilícito civil*, Barcelona, Ed. Bosch, 1985, pág. 36. Al amparo de la doctrina de obligación *in solidum*, "[l]a parte lesionada, para conservar su acción contra cada uno de los coautores, deberá interrumpir la prescripción en relación a cada uno de ellos ... ". Íd., pág. 38.

En el caso de autos, la aplicación mecánica de la normativa prevaleciente constituye una injusticia palmaria para los demandados traídos al pleito casi cinco (5) años después que se incoara la demanda original.