EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Julia R. Rodríguez Burgos<br><br>Demandante-Recurrida<br><br>v.<br><br>Kmart Corp. y Carlos Mercado,<br>et al.<br><br>Demandados-Peticionarios | Certiorari<br><br>2004 TSPR 180<br><br>163 DPR ____ |

Número del Caso: CC-2003-16

Fecha: 16 de noviembre de 2004

Tribunal de Circuito de Apelaciones:

Circuito Regional II

Juez Ponente:

Hon. Guillermo Arbona Lago

Abogados de la Parte Peticionaria:

Lcdo. Luis Sánchez Betances
Lcda. Teresa Seda Ramos

Abogada de la Parte Recurrida:

Lcda. Sara M. Chico Matos

Materia: Despido Injustificado, Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Julia R. Rodríguez Burgos

    Demandante-Recurrida

      v.                          CC-2003-16

Kmart Corp. y Carlos Mercado,
*et al.*

    Demandados-Peticionarios


SENTENCIA


San Juan, Puerto Rico, a 16 de noviembre de 2004.


En el presente caso, el Tribunal de Apelaciones concluyó que el Sr. Carlos Mercado asumió como deudor solidario el pago de una transacción que puso fin a la querella por despido injustificado, horas extras y hostigamiento sexual de la Sra. Julia R. Rodríguez Burgos contra éste y Kmart Corporation. El peticionario, señor Mercado, nos solicita que revisemos esta determinación. Veamos.

I

La Sra. Julia R. Rodríguez Burgos presentó una querella sobre despido injustificado, pago de horas extras y hostigamientos sexual ante el

Tribunal de Primera Instancia contra Kmart Corporation (en adelante Kmart), Carlos Mercado y otros. Luego de presentar contestación a la demanda y de otros incidentes procesales, Kmart llegó a un acuerdo de "Relevo de Responsabilidad Civil y Penal y Acuerdo sobre Confidencialidad" con la señora Rodríguez Burgos, el cual fue aprobado por el Secretario del Trabajo y Recursos Humanos del Estado Libre Asociado de Puerto Rico.

Transcurrido dos (2) meses de firmarse este relevo, Kmart se acogió a la protección del Capítulo 11 de la Ley de Quiebras Federal.[1] Por consiguiente, solicitó al tribunal de instancia la paralización de los procedimientos. Rodríguez Burgos, por su parte, se opuso bajo el fundamento de que la citada Ley de Quiebras sólo protege al deudor que se acoge a sus beneficios y, por lo tanto, los procedimientos debían continuar con respecto al señor Mercado por éste no estar bajo la jurisdicción del Tribunal de Quiebras, y por éste responder solidariamente junto a Kmart de los daños reclamados. Solicitó que se le ordenara al señor Mercado cumplir estrictamente con el acuerdo transaccional. Vistos los escritos de las partes, el tribunal paralizó en su totalidad los procedimientos en el caso de autos y ordenó su archivo, sin perjuicio de que posteriormente se deje sin efecto la paralización por algún

---

[1] 11 U.S.C.A. secs. 1101-1147.

cambio en las circunstancias de Kmart y alguna parte interesada solicite la reapertura del caso.

Oportunamente, la señora Rodríguez Burgos acudió ante el Tribunal de Apelaciones. Aunque aceptó que procedía la paralización de toda reclamación contra Kmart, alegó que el señor Mercado respondía solidariamente por la cuantía acordada en el relevo. Sostuvo que ella había firmado el relevo "basándose en que las partes codemandadas responderían solidariamente por la cantidad acordada". En vista de ello, solicitó al tribunal apelativo que dejara sin efecto la paralización de los procedimientos con relación a Mercado para poder cobrarle a éste la indemnización pactada.

El Tribunal de Apelaciones modificó la determinación del Tribunal de Primera Instancia y ordenó la ejecución del relevo en cuanto al señor Mercado. Examinado el contenido del referido documento, el foro intermedio concluyó que "los codemandados [el señor Mercado y Kmart] se obligaron a pagar **solidariamente** a [la señora Rodríguez Burgos] cierta suma de dinero". (Énfasis suplido). Resolvió, además, que a pesar de que Rodríguez Burgos no podía reclamarle a Kmart, no había impedimento para que se continuara el tramite judicial contra el señor Mercado en cuanto "al pago total del acuerdo transaccional que dio fin al litigio", por tratarse este caso de una deuda contractual solidaria.[2]

---

[2] Se citó el Art. 1090 del Código Civil, 31 L.P.R.A. sec. 3101, que dispone que:

Inconforme, el señor Mercado acudió ante nos. Sostiene que el acuerdo de relevo lo firmó Kmart con la señora Rodríguez Burgos y que del mismo no se desprende obligación alguna, solidaria o individual, por su parte. Según se alega, el señor Mercado ni siquiera fue parte del acuerdo y permitir que se ejecute contra él la compensación estipulada violaría su debido proceso de ley. Vista su solicitud de *certiorari*, le concedimos un término a la señora Rodríguez Burgos para que mostrara causa por la cual no debíamos revocar la determinación del Tribunal de Apelaciones aquí recurrida y devolver el caso al tribunal de instancia para que, previa celebración de una vista evidenciaria, se determine si el señor Mercado participó de tal modo en el contrato de transacción que en alguna forma se obligó al pago de la cantidad acordada.

Con el beneficio de la comparecencia de ambas partes, resolvemos.

Debemos pasar juicio sobre la determinación del Tribunal de Apelaciones en cuanto a que del relevo firmado por la señora Rodríguez Burgos surge una obligación contractual solidaria por la cual responde el señor Mercado.

---

La concurrencia de dos o más acreedores o de dos o más deudores en una sola obligación no implica que cada uno de aquéllos tenga derecho a pedir ni cada uno de éstos deba prestar íntegramente las cosas objeto de la misma. Sólo habrá lugar a esto cuando la obligación expresamente lo determine, constituyéndose con el carácter de solidaria.

II

A

Existe solidaridad cuando, al concurrir más de un deudor, el(los) acreedor(es) puede exigir el pago íntegro de su crédito a cualesquiera de los deudores sin necesidad de cobrarles a todos simultáneamente. Art. 1097 del Código Civil, 31 L.P.R.A. sec. 3108; Ramos v. Caparra Dairy, Inc., 116 D.P.R. 60 (1985); Arroyo v. Hospital La Concepción, 130 D.P.R. 596 (1992). De igual forma, si los deudores se obligaron solidariamente, a pesar de concurrir más de un acreedor, cualesquiera de éstos está facultado para exigir el pago total del crédito sin que los demás acreedores intervengan en el cobro. *Véanse casos citados anteriormente*. Es decir, ante una obligación solidaria cada deudor tiene derecho a pedir, y cada acreedor está obligado a entregar, la prestación adeudada en su totalidad. Arroyo v. Hospital La Concepción, *supra*, a la pág. 600.

Precisamente en Arroyo v. Hospital La Concepción, *supra*, aclaramos en cuanto al concepto de solidaridad entre deudores que:

> La pluralidad de deudores no ha significado, [...] la posibilidad de recibir varias prestaciones, sino la posibilidad de recibir la única prestación debida de cualquiera de las personas obligadas, o de que en definitiva quede satisfecho el interés del acreedor en la prestación única a base de la obligación que pesa sobre varios deudores (por ejemplo, si el primer deudor solidario demandado resulta insolvente o solvente sólo en parte). Cada uno de los deudores debe, pues, toda la prestación, pero el acreedor sólo tiene derecho a recibirla una sola vez, sea de un solo deudor (si ha bastado para el

cumplimiento de la prestación debida) o de varios. (Citas omitidas). A la pág. 601, *citando a* Puig Brutau.

Los deudores solidarios asumen cada uno la responsabilidad personal de cancelar la deuda total sin necesariamente haber aprovechado el cien por ciento de lo recibido, en cuyo caso aquél que haya pagado en exceso de lo debido podrá repetir contra los demás deudores, con el riesgo de que éstos, por insolvencia, no puedan resarcirle lo pagado de más. *Id.*, a la pág. 602. En vista del agravamiento que representa una deuda solidaria para el deudor, se requiere que dicha condición se pacte expresamente al convenir la obligación. *Id.* La solidaridad no se presume. "No puede presumirse que el que libremente ha contratado, sin manifestarlo, se haya querido comprometer a más de lo que consta en el convenio". *Id.*, *citando a* Borrell Macía.

Con relación a esto, el Art. 1090 de nuestro Código Civil, *supra*, declara que:

> La concurrencia de dos o más acreedores o de dos o más deudores en una sola obligación no implica que cada uno de aquéllos tenga derecho a pedir ni cada uno de éstos deba prestar íntegramente las cosas objeto de la misma. **Sólo habrá lugar a esto cuando la obligación expresamente lo determine, constituyéndose con el carácter de solidaria.** (Énfasis suplido).

Por lo tanto, en el mismo Código se expresa que si del texto de las obligaciones no se desprende un pacto de solidaridad, "el crédito o la deuda se presumirán divididos en tantas partes como acreedores o deudores haya,

reputándose créditos o deudores distintos unos de otros". Art. 1091 del Código Civil, 31 L.P.R.A. sec. 3102.

Con referencia a estas disposiciones legales, hemos expresado que, en el ámbito de las obligaciones contractuales, la solidaridad es una excepción. General Accd. Ins. Co. P.R. v. Ramos, 148 D.P.R. 523 (1999). Para que una obligación sea solidaria, ello tiene que desprenderse de manera "clara y evidente del contrato". Id., a la pág. 537.

A la luz de esta normativa, tenemos que determinar si el señor Mercado se obligó solidariamente con Kmart a pagar la compensación acordada en el convenio de relevo que la señora Rodríguez Burgos pretende ejecutar en su contra en el caso de autos.

B

De entrada, procede aclarar que no está en controversia si el señor Mercado responde o no por los alegados actos de hostigamiento sexual y las reclamaciones de salario y despido injustificado. Lo que se disputa es si él participó de alguna manera en el convenio de relevo de tal forma que advino deudor solidario en la transacción que puso fin a la querella de la señora Rodríguez Burgos.

A pesar de que en el referido "Relevo de Responsabilidad Civil y Penal y Acuerdo sobre Confidencialidad" se estipuló que el mismo sería confidencial, reproducimos parte editada de éste para

propósitos de la adjudicación de la controversia. En la
parte aquí pertinente, se acordó lo siguiente:

> Yo, Julia Rodríguez Burgos (en adelante, la RELEVANTE), POR LA CANTIDAD DE [...] relevo para siempre a Kmart Corporation y Carlos Mercado (en adelante RELEVADOS y/o DEMANDADOS), sus directores, asegurados, agentes, empleados, sirvientes, subsidiarias [...], nombrados aquí o no, quien[es] junto con los demandados mencionados pueden ser responsable a la **RELEVANTE** de manera solidaria o mancomunada, de cualquier reclamación presente, pasada o futura, acción civil, penal o administrativa, querella, demanda, reclamación de daños, cobro de dinero, costas o gastos, presentes, pasados o futuros, relacionados de alguna manera con los hechos y alegaciones contenidas en este caso [...] relativo a Despido Injustificado, Discrimen, Salarios y Daños y Perjuicios.
>
> [...]
>
> Las partes entienden y por eso acuerdan que este **RELEVO TOTAL DE RESPONSABILIDAD CIVIL Y PENAL Y ACUERDO DE CONFIDENCIALIDAD**, implica un compromiso en cuanto a reclamaciones presentes, pasadas y futuras, que la paga monetaria recibida por las partes no será tomada como una admisión de responsabilidad por parte de **LOS RELEVADOS Y/O DEMANDADOS.**
>
> Las partes entienden y por eso acuerdan que este **RELEVO TOTAL DE RESPONSABILIDAD CIVIL Y PENAL Y ACUERDO DE CONFIDENCIALIDAD**, ha sido hecho por la RELEVANTE sin depender de ninguna aseveración o representación hecha por las partes aquí relevadas y/o representadas de éstas.
>
> La RELEVANTE expresa que ninguna promesa o acuerdo, fuera de lo aquí expresado, ha sido hecho a ella. La **RELEVANTE** también se declara competente para entender los alcances de este documento y firmar el mismo luego de que su abogada le explicara el contenido del mismo. Las partes también acuerdan que este **RELEVO TOTAL DE RESPONSABILIDAD CIVIL Y PENAL Y ACUERDO DE CONFIDENCIALIDAD** ha sido tomado por las partes de manera voluntaria, en el que se recogen todos los acuerdos entre las partes.

Como vemos, del texto de este acuerdo no se desprende que los relevados o demandados, señor Mercado y Kmart, hayan pactado responsabilidad solidaria. *Véase*, General Accd. Ins. Co. P.R. v. Ramos, *supra*. Más aún, ni siquiera surge que el señor Mercado haya sido parte activa en la elaboración y acuerdo de este relevo. Lo que sí se desprende es que la señora Rodríguez Burgos relevó a éste de toda responsabilidad por lo hechos alegados en la querella a cambio de una cantidad de dinero específica.

No obstante, la señora Rodríguez Burgos alega que el señor Mercado responde solidariamente por la indemnización pactada porque ella firmó el relevo "basándose en que las partes codemandadas responderían solidariamente por la cantidad acordada". Al respecto, en contestación a nuestra orden de mostrar causa, la señora Rodríguez Burgos se limita a reiterar lo anterior y nos indica que el señor Mercado siempre estuvo representado por el mismo abogado que representaba a Kmart durante la transacción. No nos señala ningún otro acto o evento que nos lleve a concluir que el señor Mercado fue parte activa en el acuerdo de relevo o que de alguna otra manera él se obligó a responder solidariamente por el mismo.

El hecho de que el señor Mercado haya estado representado por el mismo abogado que Kmart en el caso de autos no es suficiente para concluir que éste responde solidariamente por la cuantía pactada en el relevo. Primero, como norma general, en casos de esta naturaleza,

es el patrono quien contrata al abogado para que lo represente tanto a él como al empleado a quien se le imputa la conducta ilícita. Segundo, aún asumiendo que Mercado efectivamente estuvo adecuadamente representado y participó en la confección del relevo, ello no es suficiente para presumir que éste pactó solidaridad pues del texto del documento no surge dicha condición expresamente.

Conforme a lo anterior, resolvemos que erró el Tribunal de Apelaciones al resolver que del "Relevo de Responsabilidad Civil y Penal y Acuerdo sobre Confidencialidad" surge una obligación de pago por la cual el señor Mercado responde solidariamente. Por consiguiente, según intimamos en nuestra orden de mostrar causa, se devuelve el caso al Tribunal de Primera Instancia para que haga una determinación específica sobre si el señor Mercado se obligó a responder de alguna otra forma por el acuerdo de transacción con la señora Rodríguez Burgos.

De determinar el foro de instancia que el señor Mercado ciertamente se obligó a indemnizar a la señora Rodríguez Burgos por el acuerdo de relevo, ordenará el pago correspondiente. Ahora, de determinarse que ello no ocurrió, la señora Rodríguez Burgos procederá a cobrar su acreencia contra Kmart por los canales procedentes, en vista de que ella relevó expresa y conspicuamente al señor Mercado de responsabilidad por los hechos alegados en la

querella y, sobre todo, dado que ella acepta la validez del referido acuerdo.[3]

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió Opinión Disidente. El Juez Asociado señor Rivera Pérez no intervino.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo

---

[3] Esto es así, a menos que la señora Rodríguez Burgos entienda que existe alguna razón para ejercer la facultad resolutoria que recoge el Art. 1077 del Código Civil, 31 L.P.R.A. sec. 3052. *Véase*, Neca Mortgage Corp. V. A & W Developers, S.E., 137 D.P.R. 860 (1995).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Julia R. Rodríguez Burgos

    Demandante-Recurrida

        vs.                              CC-2003-16
     Certiorari

Kmart Corp. y Carlos
Mercado, et al.

    Demandados-Peticionarios

Opinión Disidente emitida por el Juez Asociado señor FUSTER BERLINGERI.

San Juan, Puerto Rico, a 16 de noviembre de 2004.

En su sentencia en el caso de autos, la mayoría del Tribunal determina, *inter alia,* que no surge del pacto de relevo de responsabilidad en cuestión que el codemandado Mercado se haya obligado a responder solidariamente por la cantidad de dinero pactado en el relevo referido.

Esta determinación de la mayoría del Tribunal me parece contraria a lo que surge de los hechos del caso y del derecho aplicable.

La norma que prevalece en nuestra jurisdicción sobre el particular es que lo que determina si una obligación ha sido garantizada solidariamente por unos codeudores es el lenguaje de los documentos y las circunstancias que rodeen la transacción.

Mansiones P. Gardens, Inc. v. Scotiabank, 114 D.P.R. 513,520 (1983). En el caso de autos, la aplicación de esa norma conduce necesariamente a la conclusión de que en efecto aquí se pactó la solidaridad de los codeudores.

Tómese, en primer lugar, el documento de relevo en cuestión, que fue suscrito tanto por Kmart como por Carlos Mercado como codemandados en el caso de autos, junto con la demandante. Dicho documento expresamente señala que:

> "...los demandados mencionados pueden ser responsables a la relevante [la demandante] de manera **solidaria**..." (enfasis suplido).

A este hecho tan contundente, de una disposición expresa de solidaridad, hay que añadir la ponderación de las circunstancias en torno a las cuales giró la transacción que son afines a la referida disposición de solidaridad. El pleito en cuestión es uno que instó la demandante por hostigamiento sexual y despido injustificado en contra de su patrono Kmart y el gerente de la tienda de Kmart donde ocurrieron los hechos, Carlos Mercado. Como el patrono es un ente corporativo, y por ende una ficción jurídica, las actuaciones concretas y materiales que estaban en cuestión eran precisamente las de Mercado, quien era parte integral de la acción y no un mero apéndice o parte meramente formal de ésta. De resultar exitosa la acción en su contra, **Mercado era responsable por sí solo por todos los daños reclamados por la demandante**, como también lo hubiera sido Kmart. Es decir, el monto de responsabilidad de Mercado no era menor que el del

codemandado Kmart sino **<u>igual</u>**, sobre todo en vista de lo que hemos resuelto ya sobre la responsabilidad de los supervisores, administradores y agentes en casos de hostigamiento sexual. Véase, <u>Rosario V. Kikuet</u>, 2000 T.S.P.R. 107 y 193. Esta igualdad de los codemandados en cuanto a su responsabilidad por la totalidad de los daños es un elemento de las circunstancias del caso que evidentemente apunta a la existencia de una responsabilidad solidaria. Véase, <u>Torres v. A.F.F.</u>, 94 D.P.R. 314, 318 (1967).

Debe tenerse en cuenta, además, que cuando Mercado suscribió el acuerdo de relevo, lo hizo evidentemente por el gran beneficio que habría de recibir a cambio. En nuestra jurisdicción prevalece el principio de *nulla obligatio est sine causa*. Los contratos sin causa, no producen efecto alguno. Art. 1227 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3432. El acuerdo de relevo en el caso de autos era evidentemente uno de naturaleza onerosa. A la demandante-relevante tenía que pagársele la cantidad acordada en el relevo; y lógicamente la obligación de hacer tal pago recaía por igual sobre cualquiera de los dos que se beneficiaban por igual del relevo en cuestión, que lo suscribieron ambos. Mercado estaba tan obligado a hacer el pago acordado como lo estaba Kmart. De otro modo, el acuerdo de relevo en cuestión era inexistente o inoficioso por carecer de uno de sus elementos constitutivos. Art. 1213 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3391. Véase, <u>Logia de Caballeros v. García</u>, 63 D.P.R. 291 (1944); <u>González Rodríguez v. Fumero</u>,

38 D.P.R. 556 (1928); y en tal caso, Mercado no hubiese quedado relevado de modo alguno de las consecuencias del pleito incoado en su contra.

Lo más lógico, sin embargo, es concluir que sí hubo un acuerdo de relevo válido, conforme al cual Kmart, o en su defecto Mercado, estaban obligados a pagarle a la demandante la cantidad acordada en el contrato de relevo en cuestión. No es necesario que la obligación de Mercado se hubiera expresado literalmente en el acuerdo de relevo. Esta obligación existía indudablemente, en virtud de lo dispuesto por el Artículo 1210 del Código Civil de Puerto Rico:

> "Los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley"; 31 L.P.R.A. sección 3375.

como por lo dispuesto en el Artículo 1229 del mismo Código:

> "Aunque la causa no se exprese en el contrato, se presume que existe y que es lícita mientras el deudor no pruebe lo contrario". 31 L.P.R.A. sección 3434.

El Tribunal ciertamente tiene la autoridad y fundamentos suficientes para determinar que el acuerdo de relevo que aquí nos concierne aparejaba **tácitamente** la obligación de Mercado de hacer el pago pactado, como *quid prod quod* del relevo otorgado, sobre todo en virtud del principio de la **reciprocidad de las prestaciones contractuales**. Véase, De Jesús González v. A.C., 148 D.P.R. 255, 267 (1999); Levy v. Autoridad de Edificios Públicos, 135 D.P.R. 382, 395 (1994);

y Util Cons. Servs. V. Municipio de San Juan, 115 D.P.R. 88 (1984).

Como la mayoría del Tribunal opta por otra ruta decisoria, que considero innecesaria y, además, onerosa para la recurrida, yo disiento.


                                        Jaime B. Fuster Berlingeri
                                             Juez Asociado