60

Francisco Andrés Ramos Acosta y Otros, demandantes y recurridos, *v.* Caparra Dairy, Inc., Milk Product (Caparra) Inc., etc., demandados y recurrentes.

*Número:* R-84-69      *Resuelto:* 14 de enero de 1985

*José A. Rivera Mercado,* abogado de los recurrentes; *Rodolfo Gluck,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

Este caso es secuela de *Ramos Acosta* v. *Caparra Dairy, Inc.,* 113 D.P.R. 357 (1982). Allí resolvimos que la muerte del menor Francisco Ramos Jiménez fue producto de la negligencia combinada de la demandada, Caparra Dairy, y de su madre, la codemandante Sonia Jiménez Colón, en setenta y treinta por ciento (70% y 30%), respectivamente. En cumplimiento del mandato la sala de origen adjudicó los daños. Dicho foro evaluó en $50,000 los del padre y en $75,000 los de la madre. Finalmente concedió a sus hermanos menores Francisco y Verónica las cantidades de $10,000 y $5,000, respectivamente.

Caparra Dairy consignó estas sumas, excepto la correspondiente a la señora Jiménez Colón, a quien sólo le satisfizo $34,171.04, que incluye intereses. Alegó que ese era el límite total de su responsabilidad hacia ella, quien era responsable en un treinta (30%) por ciento. Argumentó que al pagar la totalidad de la deuda a los demás codemandantes nació una

acción de nivelación ascendente a la cantidad de $20,430.90, representativa de lo que la señora Jiménez Colón le correspondía pagar a éstos.

El Tribunal Superior, Sala de Carolina, rechazó esa contención. Resolvió que tal retención no procedía pues Caparra Dairy no había formulado una reconvención contra la señora Jiménez Colón. Entendió que ello era el mecanismo adecuado para hacer valer su alegado derecho de crédito. En adición determinó que la acción estaba prescrita por no haber sido presentada dentro del período estatutario de un año a partir de la fecha en que el deudor solidario fue emplazado.

A petición de Caparra Dairy revisamos.

## II

Nuestra decisión que distribuye la negligencia lleva inmersa la premisa lógica de que existieron dos cocausantes que produjeron el daño.

■ Aunque frente al tercero perjudicado los cocausantes son solidariamente responsables, la determinación judicial de negligencia atribuible a uno de los cocausantes tiene como objetivo principal que ése únicamente responda por el monto de su responsabilidad en el daño causado. Según el Art. 1802 del Código Civil, 33 L.P.R.A. sec. 5141, no debe imponérsele obligación por los daños en exceso del grado de su culpa cuando la misma ha sido compartida con otra persona y así se ha adjudicado.

■ Este principio de responsabilidad según el grado de negligencia de un cocausante, a menudo se confunde con el de responsabilidad como deudor solidario. Son principios diferentes y debemos distinguirlos. La solidaridad se define como "[l]a pluralidad subjetiva . . . en vez de producir la división de la relación obligatoria en créditos o deudas separados, permite por el contrario a uno solo de los acreedores exigir el total importe del crédito, y obliga a cada uno de los deudores

a pagar la totalidad de la deuda". D. Espín Cánovas, *Manual de Derecho Civil Español*, 2da ed., Madrid, Ed. Rev. Der. Privado, 1961, Vol. III, págs. 121–122. Esta relación obligacional es la que liga a los cocausantes de un daño ante el perjudicado. Su razón de ser y aplicación se expone así:

> En primer término es preciso tener presente que el daño no se habría producido sin el concurso culpable de todos los responsables. Si uno de ellos no ha concurrido con su acción u omisión, de más está decir que nada tendrá que ver con el suceso. Este ha sido la consecuencia de la actividad conjunta de todos los obligados al resarcimiento, y si la lesión ha nacido de la reunión de actos positivos o negativos, nada más lógico que cada uno responda por el todo, ya que individualmente considerado es tan culpable como si hubiese actuado solo. L. A. Colombo, *Culpa Aquiliana*, Buenos Aires, Ed. La Ley, 1944, pág. 691.

■ Nuestro ordenamiento jurídico reconoce y establece la existencia de solidaridad entre cocausantes de un perjuicio ante el damnificado. *Cruz et al.* v. *Frau*, 31 D.P.R. 92 (1922); *Cubano* v. *Jiménez et al.*, 32 D.P.R. 167 (1923); *Rivera* v. *Great Am. Indemnity Co.*, 70 D.P.R. 825 (1950); *Torres* v. *A.F.F.*, 94 D.P.R. 314 (1967). Aunque la responsabilidad pecuniaria es solidaria, una reclamación de pago dirigida hacia un cocausante no aumenta ni disminuye su responsabilidad objetiva en una actuación culposa.

■ Una vez el deudor solidario realiza el pago en proporción mayor a la responsabilidad que le correspondía, surge a su haber un crédito que no es otra cosa que el derecho a reclamar la cuantía satisfecha en exceso de esa responsabilidad. *García* v. *Gobierno de la Capital*, 72 D.P.R. 138 (1951); *Torres* v. *A.M.A.*, 91 D.P.R. 714 (1965); *Serralta* v. *Martínez Rivera*, 97 D.P.R. 466 (1969).

El nacimiento de esta causa de acción, derivada de una relación interna, ha sido denominada "de contribución, . . . de nivelación, de reembolso y de regreso" —*Soc. de Gananciales*

v. *Soc. de Gananciales,* 109 D.P.R. 279, 282 (1979). Tiene como fundamento último el evitar el enriquecimiento injusto.

> . . . La doctrina resalta el carácter *ex novo* de esta acción, su eminente sesgo legal. Se trata, en realidad, de evitar situaciones de enriquecimiento injusto, reconduciendo subjetivamente la carga prestacional hacia quienes, en último término, corresponda. No es preciso acudir a las ideas de mandato o representación para fundar la pretensión de regreso. Basta invocar la ventaja que para los codeudores deriva del pago efectuado por uno de ellos. Como explica RUBINO, al ser tenido cada obligado como deudor del todo, cuando paga lo hace en su interés, a fin de liberarse de la obligación y sus consecuencias; pero este hecho se resuelve en un beneficio para los demás, al quedar liberados a la par. F. Soto Nieto, *Caracteres fundamentales de la solidaridad pasiva,* 63 Rev. Der. Privado 782, 801 (1980).

En virtud de lo expuesto no podemos coincidir con la ilustrada sala de instancia de que el derecho de nivelación no está accesible para la demandada Caparra Dairy.[1] Concluir diferente minaría postulados cardinales que rigen nuestro sistema

---

[1]Ante esa solicitud de nivelación, el Tribunal Superior expresó que "[l]a pretensión de la parte aquí demandada ha sido rechazada por el Tribunal Supremo de Puerto Rico en *Security* v. *Tribunal Superior,* 101 D.P.R. 191". Anejo A, pág. 5.

Seguidamente cita el siguiente texto del referido caso, a la pág. 196:

"En el recurso la Security alega error en la sentencia y en la resolución del tribunal inferior consistentes en *habérsele responsabilizado frente a la Manhattan Dairy* (su propia asegurada) y a los hermanos Ortiz (uno de los cuales, el conductor, era también su asegurado), *a pesar de que nunca fue demandada ni hecha reclamación alguna en el pleito* por parte de éstos; y en habérsele negado participación en los fondos consignados por la Insurance Co. of North America, *a pesar de su derecho a contribución contra ésta.*

"El primer error levantado por la Security no podía ser más obvio, puesto que los interventores (Manhattan y los hermanos Ortiz) *no radicaron demanda ni otro tipo de reclamación, durante el pleito,* contra la peticionaria." Anejo A, pág. 6.

La interpretación que forja el tribunal de instancia de la citada opinión es errónea y fuera de contexto. *Security Ins.* planteaba dos controversias: (1) el habérsele responsabilizado frente a sus propios asegurados a pesar de no existir ningún tipo de reclamación contra ella; y (2) no habérsele reconocido el derecho de nivelación.

de adjudicación en el ámbito de las obligaciones y los daños y perjuicios.

Es a base de los principios expuestos que Caparra Dairy reclama que se le reconozca su derecho de nivelación. Invoca la figura de compensación como forma de extinción de las obligaciones, normadas en nuestro Código Civil en los Arts. 1149 a 1156. (31 L.P.R.A. secs. 3221 a 3228.) Veamos.

■ El Art. 1149 del Código Civil dispone que "[t]endrá lugar la compensación cuando dos personas, por derecho propio, sean recíprocamente acreedoras y deudoras la una de la otra". (31 L.P.R.A. sec. 3221.)

> Según estas nociones, puede definirse la compensación como la extinción de dos obligaciones que, existentes en sentido inverso entre las mismas personas, repútanse pagadas, totalmente o hasta la concurrencia de la más débil, según que la cifra de la una sea igual o no a la de la otra. *Compensatio est debiti et crediti inter se contributio.* Cada uno de los acreedores se paga reteniendo lo que debe. Estas ideas se hallaban recogidas en las Partidas, al decir que "compensación es otra manera de pagamiento, porque se desata la obligación de la debda, que un ome deue a otro, e *compensatio* en latín tanto quiere decir en romance, como descontar un debdo por otro". G. Velázquez, *Las obligaciones segun el Derecho puertorriqueño*, Orford, New Hampshire, Ed. Equity Pub. Corp., 1964, págs. 215–216.

El término surge del concepto *"cum pensare*, pesar reunidas dos cosas —significa, etimológica y muy gráficamente, una operación figurada de pesar simultáneamente dos obligaciones, para extinguirlas en la medida en que el importe de la una esté

---

La cita reproducida por el Tribunal Superior para sostener su posición se refiere a la primera controversia planteada, sobre la responsabilidad de una parte por concepto de los daños ocasionados. En el de autos la situación es diferente. La responsabilidad de las partes envueltas por razón de su negligencia ya ha sido determinada.

La segunda controversia en torno a la figura de nivelación, presente en este caso, fue resuelta de manera afirmativa: declaramos su existencia y procedencia.

comprendido en el de la otra". J. Castán Tobeñas, *Derecho civil español, común y foral*, 11ma ed., Madrid, Ed. Reus, 1974, T. III, págs. 371–372. O sea, "que la compensación viene a ser un pago abreviado (*quia interest nostra potius non solvere quam solutum repetere*, como decía el Digesto XVI, II, 3°) que evita el 'vaivén' o 'ida y vuelta' de sendas prestaciones". Véase a R. López Vilas, en *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Rev. Der. Privado, 1980, T. XVI, Vol. I, pág. 418.

Su razón de ser la expone Díez-Picazo:

> El fundamento de la compensación es muy sencillo. Se encuentra en la conveniencia de simplificar las operaciones de cumplimiento, sustituyendo dos o más pagos por uno solo mediante una simple operación aritmética. . . . Sin embargo, la raíz última de la compensación, desde el punto de vista jurídico, no se encuentra tanto en la simplificación de las operaciones, ni en la evitación de los medios de pago, cuanto en el carácter objetivamente injusto y desleal del comportamiento de quien reclama un crédito siendo al mismo tiempo deudor del demandado, pues contrario a la buena fe es pedir aquello mismo que luego ha de ser restituido (*dolo facit qui petit quod rediturus est*). L. Díez-Picazo, *Fundamentos del Derecho Civil Patrimonial*, Madrid, Ed. Tecnos, 1979, págs. 642–643.

■ Se reconocen cuatro especies de compensación:

> [L]a legal, la voluntaria facultativa, la voluntaria convencional y la judicial. *Legal* es la que se opera de pleno derecho, en virtud de concurrir ciertas condiciones requeridas por la ley como necesarias para ello. *Facultativa* es la que una de las dos partes contratantes puede reclamar levantando el obstáculo que, en su interés solamente, impide que se produzca la compensación de pleno derecho. *Convencional*, la que tiene lugar cuando, a pesar de no concurrir todos los requisitos de la ley, convienen los deudores y acreedores mutuos en compensar sus obligaciones respectivas. *Judicial* es la que se opera cuando el juez, en caso de demanda reconvencional formulada por el demandante, liquida el crédito correspondiente a éste, haciéndolo así compensable. Colin y

Capitant notan con razón que la verdadera compensación es la legal; la convencional y la judicial son más bien operaciones diferentes. . . . (Escolio omitido.) Velázquez, *op. cit.*, págs. 217–218.

■ En el caso de autos la compensación es de tipo legal. Como tal, posee una característica particularísima. Conforme el Art. 1156 del Código Civil, "[e]l efecto de la compensación de extinguir una y otra deuda en la cantidad concurrente, aunque no tengan conocimiento de ella los acreedores y deudores". 31 L.P.R.A. sec. 3228. Sin embargo, la doctrina afirma que la aplicación de este artículo no es una tan categórica ni necesaria como aparenta ser. Si bien es de carácter ipso jure, su reconocimiento requiere un pronunciamiento judicial.

. . . [Nuestro artículo 1156] proclama el efecto automático de la compensación. Pero ésta, en realidad, no se produce hasta que la alega y declara, en juicio o fuera de él, una de las partes afectadas; y es en ese momento en el que la compensación tiene lugar "como si" la extinción de las pretensiones contrapuestas se hubiese verificado en el momento de surgir la segunda de ellas y hasta la cantidad concurrente de ambas.

La alegación de la compensación es, por tanto, el detonante obligado para poner en marcha el mecanismo de la misma, que opera, entonces, automáticamente e "ipso iure", con lo cual los efectos compensatorios se retrotraen y sitúan en el momento de concurrencia de ambas prestaciones.

En rigor, pues, el automátimos [*sic*] de la compensación va referido a su eficacia, más que al modo de producirse la misma; o lo que es lo mismo, el carácter automático e "ipso iure" de la compensación ha de entenderse en relación con la retroactividad de sus efectos, los cuales hay que referirlos y situarlos en el momento en que se produjo la concurrencia de las obligaciones ("ex tunc"). Y si la compensación se produce "ipso iure" y desde que se dan las condiciones legalmente exigidas, en realidad, la parte ostenta, al no aplicarse de oficio la compensación, la facultad de hacerla valer o no, renunciándola o no invocándola. López Vilas, *op. cit.*, págs. 496–497.

Ahora bien, una vez declarada su existencia judicialmente, la misma tiene efecto retroactivo. Surte efecto desde todos sus requisitos legales. ([2]) Ese es el verdadero sentido y significado del Art. 1156 antes referido.

Hecha la declaración de compensación, concurriendo todos sus requisitos y pudiendo, por tanto, producirse sus efectos, éstos se retrotraen, . . . al momento en que ambos créditos se contrapusiesen con el carácter de compensables. Este efecto retroactivo, implantado por medio de una ficción, encierra una concesión del Derecho moderno a la doctrina mantenida en el derecho común y que prevalece en el Código civil francés, según la cual la compensación se produce *ipso iure*, en el momento en que se da la compensabilidad de ambos créditos. (Escolio omtido.) A. von Tuhr, *Tratado de las Obligaciones*, Madrid, Ed. Reus, 1934, T. II, pág. 170.

Resolvemos que el derecho de compensación surgió en el momento en que Caparra Dairy pagó como codeudora solidaria de quien a su vez era su acreedora. Se cumplieron los requisitos exigidos a esta forma de extinción de las obligaciones prescritas en el Art. 1150 de nuestro Código Civil. ([3])

---

([2]) Sobre la necesidad de la declaración judicial y sus efectos: *Walla Corp.* v. *Banco Com. de Mayagüez*, 114 D.P.R. 216 (1983). Véanse además: A. M. Borrel y Soler, *Cumplimiento, incumplimiento y extinción de las obligaciones contractuales civiles*, Barcelona, Ed. Bosch, 1954; R. Álvarez Vigaray, *El efecto automático de la compensación, en estudios de Derecho Civil en honor del Prof. Castán Tobeñas*, Pamplona, Eds. Univ. Navarra, 1969, T. IV, pág. 37; J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed. rev., Barcelona, Ed. Bosch, 1976, T. I, Vol. II.

([3]) Reza:

"Para que proceda la compensación, es preciso:

"1. Que cada uno de los obligados lo esté principalmente, y sea a la vez acreedor principal del otro.

"2. Que ambas deudas consistan en una cantidad de dinero, o siendo fungibles las cosas debidas, sean de la misma especie y también de la misma calidad, si ésta se hubiese designado.

"3. Que las dos deudas estén vencidas.

"4. Que sean líquidas y exigibles.

"5. Que sobre ninguna de ellas haya retención o contienda promovida por terceras personas y notificada oportunamente al deudor."

## III

■ Reconocido el derecho de compensación de Caparra Dairy, examinemos el procedimiento para reclamarlo. El foro de instancia determinó que estaba impedida de hacerlo valer, pues no reconvino. Erró.

Primeramente, la defensa afirmativa de Caparra Dairy de que la negligencia del menor en el accidente era imputable a sus padres, fue formulada en la contestación a la demanda, (4) expuesta, aclarada y modificada en su teoría en el informe de conferencia preliminar entre abogados (5) y objeto de prueba durante el proceso judicial. (6) Esa prueba enmendó las ale-

En *Porto Rico Fertilizer Company* v. *Gandía*, 29 D.P.R. 386, 390 (1921), expresamos que tampoco puede ser objeto de compensación un "crédito litigioso". Este tipo de crédito fue definido así en *Martínez, Jr.* v. *Tribunal de Distrito*, 72 D.P.R. 207, 209 (1951): "Debe reputarse como litigioso . . . el crédito 'que, puesto en pleito, no puede tener realidad sin previa sentencia firme que lo declare', . . . o sea aquél que está en duda y se disputa, aquél en el que los derechos son inciertos." (Citas omitidas.)

Pero más que una excepción a la compensación, como forma de extinción lo que se instaura en esa decisión es un período de espera a su reconocimiento. Pueden encontrarse presentes todos los requisitos en la relación obligacional, aun el de exigibilidad, pero su reconocimiento está subordinado a la decisión judicial de su existencia. De ella reconocer la concurrencia de los requisitos legales, el crédito deja de ser litigioso y la determinación se retrotrae al momento en que se contrapusieron los créditos y débitos de las partes, produciéndose la compensación legal.

(4) La expresó así: "El accidente objeto de la demanda radicada en el presente caso, se debió única y exclusivamente a la negligencia del occiso Francisco Andrés Ramos Jiménez, *cuya negligencia le es imputable a sus padres*, y en la alternativa, negligencia contributoria de la ocurrencia del accidente en que perdiera la vida." Véase la concepción de la Regla 6.3 de Procedimiento Civil, *in fine*.

(5) Fue consignada del siguiente modo:

"Se niega que la parte demandada incurriera en negligencia alguna, por el contrario, se alega que *la muerte del menor se debió a la sola culpa de las personas que tenían su cuidado, quienes lo dejaron desatendido y en un momento se lanzó a la carretera, sin ser visto, ni poder haber sido visto, por el conductor del vehículo de la demandada*." (Énfasis suplido.)

(6) Nuestra decisión original, que constituye la ley del caso, estuvo basada precisamente en un examen de la Exposición Narrativa de la Prueba. Revocamos a la sala de instancia que había declarado sin lugar la demanda fundado en que el chofer de Caparra Dairy había sido negligente. Sin reser-

gaciones. *Canales Velázquez* v. *Rosario Quiles*, 107 D.P.R. 757, 764 (1978); *Valle* v. *Suc. Wiscovitch*, 88 D.P.R. 86, 90–91 (1963).

Segundo, el derecho de nivelación y compensación no estaba sujeto a una reconvención. Surgió desde el momento en que Caparra Dairy consignó el pago para satisfacer la sentencia. Antes no tenía crédito alguno a su favor y por ende la figura de compensación no existía. Cuando se contestó originalmente la demanda, lo único que había era una reclamación de daños basada en negligencia. La cuantía no era líquida ni exigible. Era indeterminada y de carácter contingente. Dependía del grado de culpa que oportunamente el tribunal reconociera a base de una valoración y cuantificación de los daños según la prueba. Ante esa realidad, ¿cómo sostener entonces que Caparra Dairy tenía que formular una reconvención? Repetimos, no había surgido derecho a nivelación como tampoco a compensación. Lo único que Caparra Dairy podía reclamar o esgrimir como defensa era negligencia concurrente contra los demandantes. Así se determinó en nuestra decisión original en cuanto a la señora Jiménez Colón.

Resolvemos que el planteamiento de Caparra Dairy, una vez adjudicada la proporción de culpa y evaluados los daños, fundado en que su acreedora señora Jiménez Colón era a su vez deudora, fue en tiempo levantado. Ello es suficiente para hacer valer su derecho reconociéndole la compensación del crédito coincidente entre ambas partes como resultado de la distribución de negligencia. A la suma de $52,500 correspondiente a la señora Jiménez Colón era oponible, por compensación, la suma de $20,430.90.

El análisis que precede refleja que el derecho de Caparra Dairy de nivelación interna utilizando la compensación como

---

vas concluimos "que la referida co-demandante fue negligente en un treinta por ciento, el cual sólo es aplicable a ella en particular. Véase: *Torres Pérez* v. *Medina Torres*, 113 D.P.R. 72 (1982)". *Ramos Acosta* v. *Caparra Dairy, Inc.*, 113 D.P.R. 357, 370 (1982).

forma de extinción, no estaba prescrito. Adviértase que el derecho de nivelación interna implica una acción de reclamo pecuniario hacia la parte deudora que no hizo su desembolso correspondiente. Véase L. Puig y Ferriol, *Régimen jurídico de la solidaridad de deudores*, en *Libro-homenaje a Ramón María Roca Sastre*, de la Junta de Decanos de los Colegios Notariales, Madrid, Ed. Gráficas Cóndor, 1976, Vol. 2, pág. 433. Caparra Dairy realizó el pago el 19 de agosto de 1983. Inmediatamente reclamó el derecho a nivelación y adujo la compensación. (⁷)

*Se dictará sentencia en que se reconozca que la consignación de Caparra Dairy fue válida y con arreglo a derecho.*

El Juez Asociado Señor Torres Rigual no intervino.

---

(⁷) Una interpretación en sentido contrario implicaría que Caparra tendría que desembolsar a la señora Jiménez Colón la totalidad de $52,000 para luego, en acción independiente, reclamarle $20,430.90 pagados en exceso.

Ello atentaría no sólo contra principios elementales de justicia, sino de economía procesal. Después de todo, el derecho no existe "para exigir cosas imposibles, absurdas, ni inútiles o innecesarias". (Escolios omitidos.) *Pueblo v. Andreu González*, 105 D.P.R. 315, 321 (1976).