# 97 DTA 161

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL IV DE MAYAGUEZ Y AGUADILLA**

JOSE DAVID RAMOS CRESPO Y CARMEN LOPEZ MENDEZ, POR SI Y EN
REPRESENTACIÓN DE LA SOC. LEGAL DE GANANCIALES POR ELLOS COMPUESTA;
ISIDRO RAMOS CABAN Y RAMONA CRESPO RIVERA
Apelados

v.

DR. ARNALDO GERENA Y LA SOC. DE GANANCIALES QUE COMPONE CON SU ESPOSA
JANE DOE; CORP. ABX, COMPAÑIA DE SEGUROS XYZ; ESTADO LIBRE ASOCIADO DE
P.R.; HOSPITAL SUB-REGIONAL DE AGUADILLA;
DEPTO. DE SALUD, JOHN DOE Y RICHARD ROE
Apelantes

Núm. KLAN-95-00876

San Juan, Puerto Rico, a 15 de julio de 1997

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Colón Birriel y la Juez Feliciano de Bonilla

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

El apelante, Dr. Arnaldo Gerena, recurre de una sentencia dictada el 30 de mayo de 1995 por el Tribunal de Primera Instancia, Sala Superior de Aguadilla, declarando con lugar la demanda de daños y perjuicios por impericia médica presentada contra el apelante por la parte apelada, José D. Ramos Crespo, Carmen López Méndez, la Sociedad Legal de Gananciales por ellos compuesta y los padres del Sr. Ramos Crespo, Isidro Ramos y Ramona Crespo. El Tribunal condenó al Dr. Gerena y al Estado Libre Asociado de Puerto Rico, de forma solidaria al pago de $20,000.00 al apelado Ramos Crespo por los sufrimientos físicos y angustias mentales experimentados, $7,000.00 a su esposa y $2,000.00 a cada uno de sus padres, más las costas.

Sometida la transcripción privada de la prueba y el alegato de la parte apelada, procedemos a resolver el presente recurso.

### II

Según surge del expediente, el 17 de marzo de 1990, en horas de la noche, el apelado Ramos Crespo, impactó con su automóvil la cerca de concreto de una residencia al quedarse dormido mientras conducía. Al momento del accidente el apelado no llevaba puesto el cinturón de seguridad.

Como resultado de dicho accidente, el apelado sufrió una herida en la rodilla derecha, fuertes golpes en el cuerpo y traumas en la cabeza y en el cuello. El apelado, alegadamente estuvo inconsciente por un corto período de tiempo.

El apelado fue trasladado a la sala de emergencias del Hospital Sub-Regional de Aguadilla donde fue atendido por el apelante Dr. Gerena, quien se desempeñaba como facultativo de dicho hospital.

El Dr. Gerena entrevistó al apelado y ordenó que se le tomaran radiografías del tórax, de la cabeza y de la rodilla derecha y que se le hicieran exámenes de orina y sangre. Las radiografías arrojaron resultados negativos. La herida del apelado fue suturada y se le administró el anti-inflamatorio Decadrón (10 miligramos) y antibióticos por vía intravenosa.

Existe controversia entre las partes sobre la comunicación habida entre el Dr. Gerena y el apelado durante la estadía de éste en la sala de emergencia. El apelado sostiene que, mientras estuvo en el hospital, le manifestó al Dr. Gerena que le dolía el cuello y que éste hizo caso omiso a sus señalamientos y quejas de dolor. Por su parte, el Dr. Gerena alegó que el apelado no se quejó de dolor en el área cervical, a pesar de que el Dr. Gerena le palpó dicha área y le ordenó que girara el cuello. Las notas del récord del apelado en sala de emergencia tomadas por el Dr. Gerena no reflejan que éste se quejara de dolor en el cuello. El Dr. Gerena no ordenó que se le tomaran placas del área cervical al apelado.

El apelado permaneció en el hospital bajo observación hasta la mañana siguiente cuando alegadamente fue dado de alta por el Dr. Rigo.

A pesar de haber sido dado de alta, el apelado continuó padeciendo dolores intensos en el área del cuello, por lo cual se vió obligado a dormir en una cama de posiciones. Una semana después del accidente, el 24 de marzo de 1990, el apelado visitó las facilidades de la Administración de

Compensaciones por Accidentes de Automóviles (ACCA), para cortarse los puntos de sutura de su herida. Allí, a solicitud suya, lo evaluó el Dr. Robles. El Dr. Robles le diagnosticó que el dolor en el cuello del cual se quejaba podía ser resultado de espasmos musculares causados por los golpes recibidos en el accidente. El Dr. Robles no le diagnosticó problema alguno en el cuello.

Según alegó el apelado, como el dolor no cesaba acudió nuevamente a la ACCA, el 29 de marzo de 1990. En esa ocasión, lo refirieron a un ortopeda, el Dr. Fidel A. Pino. Es en esa fecha cuando aparece la primera anotación en el récord médico que señala que el apelado se quejaba de dolor en el cuello. El Dr. Pino ordenó que se le tomaran radiografías del cuello. Estas revelaron la existencia de varias fracturas en las vértebras cervicales, por lo cual le ordenó hacerse un CT Scan. El CT Scan reveló que el apelado tenía fracturadas las cervicales.

Como parte del tratamiento, el Dr. Pino prescribió que se le inmobilizara el cuello al apelado mediante un *"Halo Ring Vest"*, el cual el apelado utilizó durant*e apróximadamente tres meses. Luego el apelado tuvo que usar un collar rígido o collar "Philadelphi*a" por espacio de un año.

Así las cosas, el 15 de marzo de 1991, el apelado, su esposa Carmen, la Sociedad Legal de Gananciales por ellos compuesta y sus padres, presentaron una demanda contra el Dr. Gerena y contra el Estado Libre Asociado de Puerto Rico (E.L.A.). En su demanda, alegaron que el Dr. Gerena había sido negligente en el diagnóstico y tratamiento brindado al apelado y que el E.L.A., como administrador del referido hospital, respondía por la actuación negligente del Dr. Gerena.

El Dr. Gerena contestó oportunamente la demanda, negando las alegaciones. Por su parte, el E.L.A. contestó la demanda y alegó que no era responsable por las actuaciones del Dr. Gerena, ya que para la fecha en que ocurrieron los hechos, la administración, operación y dirección de la Sala de Emergencias de ese hospital estaba a cargo de Universal Medical Services conforme a un contrato suscrito entre ellos.

El 24 de octubre de 1994, el E.L.A. presentó una demanda contra tercero para traer al pleito a Universal Medical Services, pero no fue admitida por el Tribunal por haber sido radicada tardíamente.

Luego de varios incidentes, se celebró la vista en su fondo los días 1, 2 y 3 de marzo de 1995. En la vista, declararon el apelado Ramos Crespo, su esposa, sus padres y el Dr. Eduardo G. Igartúa Juliá, perito del apelado, el apelante Dr. Gerena y la Dra. Alicia G. Feliberty Irizarry, perito de éste último.

Según se desprende de la transcripción de la evidencia, el apelado Ramos Crespo declaró que antes de que el Dr. Gerena lo diera de alta le señaló que seguía teniendo dolor en el cuello y que éste le dijo que *"eso podía ser debido al cantazo, que se pusiera un collar de foam"*. Durante su testimonio, la esposa del apelado confirmó lo anterior.

El apelado testificó que experimentó intensos dolores, que durante un tiempo su esposa tenía que hacerle todo y que ya no puede trabajar ni hacer las mismas cosas que antes.

Tanto la esposa como los padres del apelado manifestaron sentirse muy mal por ver los dolores que sufría el apelado y porque durante un tiempo éste no podía valerse por sí sólo.

El Dr. Igartúa, perito del apelado, testificó que en casos como el del apelado, lo adecuado, era presumir la existencia de daño en las cervicales e inmobilizar al paciente. Indicó, además, que para descartar la existencia de fracturas había que realizar una serie de radiografías de las cervicales desde distintos ángulos. Señaló, además, que de haber realizado dichas placas el Dr. Gerena, éstas le hubieran permitido diagnosticar las fracturas y comenzar su tratamiento.

Por su parte, el Dr. Gerena declaró que había actuado conforme a las normas establecidas y aceptadas para la práctica de la medicina. Insistió en que él palpó el cuello al apelado y que éste nunca se quejó de dolor en dicha área. Señaló, además, que durante el examen, el apelado movió, flexionó, extendió y rotó el cuello, según él le instruyó que lo hiciera. El Dr. Gerena manifestó que le realizó un examen neurológico al apelado y que éste resultó tener un nivel de conciencia normal de acuerdo con la *"Glasgow Coma Scale Score"*.

En su testimonio, la Dra. Feliberty, perito del Dr. Gerena, expresó que en su opinión que, de acuerdo a lo que surge del récord médico, el apelante había actuado adecuadamente al atender al apelado. Durante el contrainterrogatorio, sin embargo, admitió que el apelado debía haber manifestado dolor en el cuello durante el período de tiempo que había pasado en el hospital en vista del tipo de lesión sufrida.

Evaluada la prueba testifical y documental así como los memorandos de derecho de las partes, el Tribunal dictó sentencia el 30 de mayo de 1995 declarando con lugar la demanda. El Tribunal concluyó que el Dr. Gerena había actuado negligentemente al no palpar el área del cuello del apelado y al no tomarle placas cervicales. El distinguido foro recurrido descartó la versión del Dr. Gerena de que había palpado al paciente, que éste había efectuado movimientos normales con el cuello, y que no se había quejado. El Tribunal expresó:

*"La controversia presente, entendemos, fue resuelta por el testimonio en sala de la propia perito de los demandados. Dijo que el dolor en el Hospital debió ser tan fuerte en las cervicales a la palpación que, incluso, se incurría en peligro de agravar las lesiones si movía el cuello. No hay que ser perito para concluir que con esas tres fracturas en la base del cuello, [el apelado] debió estar quejándose de dolor y que no es creíble el testimonio del Dr. Gerena que le palpó y le ordenó que girara el cuello de un lado y otro y éste no se le quejó. No palparlo y, ante las quejas de dolor, no ordenarle placas cervicales y luego darlo de alta fueron actos de extrema negligencia."*

El Tribunal condenó al Dr. Gerena y al E.L.A. a satisfacer solidariamente el pago de las siguientes sumas: $20,000.00 a José David Ramos Crespo, por los sufrimientos y angustias mentales producidos por la negligencia del Dr. Gerena; $2,000.00 a cada uno a Isidro Ramos Cabán y Ramona Crespo, padres del apelado; $7,000.00 a Carmen López Méndez, la esposa del apelado. Los condenó, además, al pago de las costas e, inicialmente, $3,000.00 en concepto de honorarios de abogado. El 6 de julio de 1995, el Tribunal dictó sentencia *Nunc Pro Tunc* dejando sin efecto la parte dispositiva de la sentencia concerniente al pago de honorarios de abogado. Inconforme, el Dr. Gerena acudió ante este Tribunal.

### III

En su recurso, el apelante imputa la comisión de varios errores, dirigidos a atacar la determinación del Tribunal *a quo* de que el apelante actuó negligentemente y a cuestionar las indemnizaciones concedidas.

Para que se adjudique responsabilidad en una acción bajo el Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141, el reclamante tiene que demostrar la concurrencia de tres elementos: (1) acto negligente, (2) daño, y (3) nexo causal entre lo uno y lo otro (entre el daño y la acción u omisión negligente de la otra persona). *Tormos Arroyo v. Departamento de Instrucción Pública del E.L.A.*, ___ D.P.R. ___ (1996), **96 J.T.S. 34,** a la pág. 806; *J.A.D.M. v. Centro Comercial Plaza Carolina,* ___ D.P.R. ___ (1993), **93 J.T.S. 26,** a la pág. 10,437; *Torres Maldonado v. J.C. Penney Company,* ___ D.P.R. ___ (1992), **92 J.T.S. 62,** a la pág. 9,513; *Arroyo v. E.L.A.,* ___ D.P.R. ___ (1990), **90 J.T.S. 101,** a la pág. 7,935.

Es necesario probar cada uno de esos elementos. José Cuevas Segarra, *La Responsabilidad Civil y el Daño Extracontractual en Puerto Rico*, **Publicaciones J.T.S.,** 1994, pág. 82.

Para determinar si hubo negligencia se evalúa la conducta del demandado a la luz de cómo hubiera actuado, en las mismas circunstancias, un hombre prudente y razonable. De acuerdo a dicha figura, la culpa o negligligencia es la falta del debido cuidado; que consiste esencialmente en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. *Miranda v. Estado Libre Asociado de P.R.,* ___ D.P.R. ___ (1996), **94 J.T.S. 152,** a la pág. 525; *Elba A.B. v. Univ. de Puerto Rico,* ___D.P.R. ___ (1990), **90 J.T.S. 13,** a la pág. 7,384.

En los casos de impericia médica, el Tribunal Supremo de Puerto Rico ha establecido que un profesional de la salud incurre en responsabilidad si deja de prestar a su paciente aquella atención médica que a la luz de los medios de comunicación y enseñanza, y conforme al estado de conocimiento de la ciencia y la práctica prevaleciente de la medicina, satisface las exigencias

generalmente reconocidas por la profesión médica. Véanse, *Santiago Otero v. Méndez*, ___ D.P.R.___ (1994), **94 J.T.S. 38**, a la pág. 11,706; *Castro Ortiz v. Municipio de Carolina*, __ D.P.R. ___(1994), **94 J.T.S. 17**, a la pág. 11,529; *Ramos Robles v. García Vicario*, ___ D.P.R.___ (1993), **93 J.T.S. 167**, a la pág. 11,397; *Oliveros v. Abreu*, 101 D.P.R. 226 (1973).

En cuanto a los hospitales, éstos vienen obligados a ejercer el mismo grado de cuidado que el de un hombre prudente y razonable en condiciones y circunstancias similares. Véanse, *Márquez Vega v. Martínez Rosado*, 116 D.P.R. 397, 405 (1985); *Núñez v. Cintrón*, 115 D.P.R. 598, 613 (1984); *Crespo v. Hato Rey Psychiatric Hospital, Inc.*, 114 D.P.R. 796, 800 (1983). Para establecer un caso *prima facie* contra un médico, el demandante viene obligado a (1) presentar prueba sobre las normas mínimas de conocimiento y cuidado médico aplicables a los generalistas o especialistas, (2) demostrar que el demandado incumplió con estas normas en el tratamiento del paciente y (3) que esto fue la causa del daño sufrido por el paciente. Véanse, *Santiago Otero v. Méndez*, **94 J.T.S. 38**, a la pág. 11,712; *Rodríguez Crespo v. Hernández*, 121 D.P.R. 639, 650 (1988); *Medina Santiago v. Vélez*, 120 D.P.R. 380, 385 (1988).

Existe una presunción de que el médico ha observado un grado razonable de cuidado y atención en la administración de tratamiento médico y que los exámenes practicados al paciente han sido adecuados. *Rodríguez Crespo v. Hernández*, 121 D.P.R. 639, 650 (1988); *Rosado v. E.L.A.*, 108 D.P.R. 789, 791-792 (1979).

El elemento de relación causal se rige por la teoría de la causalidad adecuada, con arreglo a la cual no se considera *"causa"* toda condición sin la cual no se hubiera producido el resultado, sino aquella que ordinariamente lo produce, según la experiencia general. *Torres Maldonado v. J.C. Penney Company*, **92 J.T.S. 62**, a la pág. 9,513; *Cárdenas Maxán v. Rodríguez*, ___ D.P.R. ___ (1990), **90 J.T.S. 36**, a la pág. 7,559.

La relación de causalidad no puede establecerse a base de meras especulaciones o conjeturas sino que, al igual que en todo caso civil, por preponderancia de la prueba. Si la evidencia señala a la existencia de múltiples causas del daño, no puede imponérsele responsabilidad al médico a menos que del conjunto de la evidencia surja que con mayor probabilidad la actuación negligente fue la causa del daño. Véanse, *Ramos Roble v. García Vicario*, ___ D.P.R. ___ (1993), **93 J.T.S. 167**, a la pág. 11,397; *Viuda de López v. E.L.A.*, 104 D.P.R. 178, 183 (1975).

Al médico se le reconoce una amplia discreción profesional en su trabajo. No existe responsabilidad por mala práctica de la medicina cuando el médico se enfrenta a una situación en la cual cabe una duda educada y razonable sobre el curso médico a seguir. El error de juicio es oponible como defensa siempre y cuando el médico hubiese efectuado esfuerzos concienzudos para enterarse y cerciorarse de los síntomas y de la condición del paciente, agotando los medios de diagnóstico a su disposición y cuando las autoridades médicas están divididas sobre el curso a seguir. *Santiago Otero v. Méndez*, **94 J.T.S. 38**, a la pág. 11,706; *Ramos Robles v. García Vicario*, **93 J.T.S. 167**, a la pág. 11,397.)

De ordinario, lo que constituye o no una práctica profesional adecuada en un caso de impericia médica debe ser establecido mediante testimonio pericial. Véanse, *Ríos Ruiz v. Mark*, 119 D.P.R. 816, 828-829 (1987); *Reyes v. Phoenix Assurance Co.*, 100 D.P.R. 871, 877 (1972); *Guzmán v. Silén*, 86 D.P.R. 532, 538 (1962). No corresponde a los tribunales prescribir tratamientos médicos. Véanse, *Ríos Ruiz v. Mark*, 119 D.P.R.816, a la pág. 821; *Cruz v. Centro Médico de P.R.*, 113 D.P.R. 719, 736 (1983).

En la situación de autos, conforme a las determinaciones contenidas en la sentencia apelada, el Tribunal de Primera Instancia concedió credibilidad a versión del apelado y de su esposa respecto a que el apelado tenía dolor en el cuello y que el Dr. Gerena no le prestó atención a este síntoma ni realizó pruebas para efectuar un diagnóstico completo. Dichas declaraciones fueron apoyadas por el testimonio del perito del apelante quien admitió que este era un síntoma razonablemente esperable en una persona con fracturas en el área cervical. El Dr. Iguartúa, perito del apelado, también testificó que, conforme a la práctica prevaleciente de la medicina, el cuello del paciente debió haber sido

inmobilizado hasta tanto que se le tomaran las correspondientes radiografías y éstas fueran negativas.

El Tribunal Supremo de Puerto Rico reiteradamente ha señalado que, de ordinario, los foros apelativos no intervendrán con las determinaciones de hechos y la adjudicación de credibilidad hecha por los tribunales de primera instancia, a menos que existan circunstancias extraordinarias, error manifiesto, pasión, prejuicio o parcialidad. *Méndez de Rodríguez v. Morales Molina*, ___ D.P.R. ___ (1996), **96 J.T.S. 149,** a la pág. 347; *Cándido Oliveras, Inc. v. Universal Insurance Company*, ___ D.P.R. ___ (1996), **96 J.T.S. 145,** a la pág. 298; *Pérez Marrero v. Colegio de Cirujanos Dentistas*, ___ D.P.R. ___ (1992), **92 J.T.S. 124,** a la pág. 9,943; *Rivera Pérez v. Cruz Corchado*, 119 D.P.R. 8, 14 (1987); Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.2.

En la situación de autos, no encontramos base para sustituir la evaluación de la prueba realizada por el tribunal *a quo* ni fundamento para negar la deferencia acostumbrada al foro de Instancia, quien tuvo una oportunidad superior a la de este Tribunal para confrontar la prueba. Véase, *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R 172, (1985). A base de la prueba, entendemos que la conclusión del Tribunal de Primera Instancia de que el Dr. Gerena actuó de forma negligente debe ser sostenida.

La parte apelante también plantea que los daños concedidos por el Tribunal resultaron excesivos. En cuanto a este aspecto, del testimonio del Dr. Igartúa se desprende que, a raíz de la negligencia del Dr. Gerena, se dilató en tratamiento de dichas fracturas causando que el apelado experimentara dolores intensos y molestias que de haber sido atendido correctamente hubieran sido menores. No se probó, sin embargo, que a causa de la negligencia del Dr. Gerena, el apelado sufriera incapacidad permanente alguna, aunque la evidencia desfilada sí tendió a establecer que la recuperación y los fuertes dolores experimentados por el apelado le causaron sufrimientos y angustias mentales tanto a éste como a su esposa y a sus padres.

El Tribunal de Primera Instancia valoró los daños sufridos por el apelado Ramos Crespo en $20,000.00. Aunque, de ordinario, la estimación de los daños está confiada a la discreción del Tribunal sentenciador, véanse, *López v. Manzano Pozas*, **96 J.T.S. 95,** a la pág. 1,315; *Torres Solis v. Autoridad de Energía Eléctrica de P.R.*, ___ D.P.R. ___ (1994), **94 J.T.S. 89,** a la pág. 12,040; *Hawayek v. Autoridad de las Fuentes Fluviales de P.R.*, ___ D.P.R. ___ (1989), **89 J.T.S. 36,** a la pág. 6,716, coincidimos con la parte apelante en que, en la situación de autos, en ausencia de prueba de que el apelado hubiera quedado incapacitado y, en vista de que la única consecuencia de la negligencia del apelado fue de aparentemente dilatar el diagnóstico y tratamiento de la fractura del apelante por poco más de una semana, esta suma podría ser excesiva. El Tribunal también concedió daños a la esposa del apelado de $7,000.00 y a sus padres de $2,000.00, cuantías que también podrían resultar altas.

Observamos, más aún, que aunque el Tribunal de Primera Instancia concluyó que la mayor parte de los daños del apelado eran de su propia hechura y que gran parte de sus sufrimientos no podían ser imputados a los demandados, no realizó deducción alguna de las compensaciones concedidas.

En efecto, el Tribunal concluyó que el accidente que había provocado las lesiones al apelado se había debido a la propia negligencia de éste y no a la de terceras personas. La prueba reflejó, en este sentido, que el demandante chocó su vehículo porque se había quedado dormido y que no llevaba puesto su cinturón de seguridad. No cabe duda que éstas fueron actuaciones negligentes. Véase, *Canales Velázquez v. Rosario Quiles*, 107 D.P.R. 757, 769-770. Cabe señalar, que la perito del apelante testificó que de haber llevado puesto el cinturón el apelado probablemente no se habría fracturado el cuello.

El Tribunal de Primera Instancia, sin embargo, estimó que la negligencia del apelado había agravado la condición del apelado, concluyendo que *"[l]o más probable es que, de haberse detectado inmediatamente las fracturas y habérsele inmobilizado el cuello inmediatamente, conforme aconseja la literatura médica, los sufrimientos y las consecuencias habrían sido menores."* El Tribunal no intentó delimitar la proporción de los daños atribuible a la propia conducta del apelado y aquella atribuible a la negligencia del apelante.

En otro contexto, el Tribunal Supremo de Puerto Rico ha resuelto que cuando una persona que ha

sido lesionada por la negligencia de un tercero sufre un agravamiento de sus daños como consecuencia de mala práctica de la medicina durante el tratamiento de sus lesiones, la parte demandante no viene obligada a establecer la proporción de los daños atribuible a cada causa. En su lugar, cada uno de los co-causantes de los daños responde solidariamente ante el demandante por la totalidad de los daños. Véase, *Rodríguez Sosa v. Cervecería India,* 106 D.P.R. 479, 483 (1977); *Merced v. Gobierno de la Capital,* 85 D.P.R. 552, 556-557 (1962); *García v. Gobierno de la Capital,* 72 D.P.R. 138, 146 (1951). Parte del fundamento de esta norma es la dificultad existente en determinar qué daños provienen de la negligencia original del causante y cuáles provienen de la negligencia de los que intervinieron con posterioridad. *Merced v. Gobierno de la Capital,* 85 D.P.R. a la pág. 552. La solución adoptada por el Tribunal Supremo de Puerto Rico en estos casos ha sido la de relevar a la parte demandante de establecer, según se le exigiría de otro modo, bajo el art. 1802, la proporción específica de los daños causados por cada demandado. La incertidumbre sobre este particular es colocada en hombros de los demandados, quienes deben responder solidariamente por la totalidad de los daños. Esta responsabilidad expandida de los demandados, sin embargo, se encuentra justificada por el derecho que asiste a éstos a repetir contra los otros co-causantes del daño para ajustar sus respectivas responsabilidades a la proporción de los daños ocasionados. Véase, *Ramos v. Caparra Dairy, Inc.,* 116 D.P.R. 60, 62-64 (1988); *García v. Gobierno de la Capital,* 72 D.P.R. 138, a la pág. 147. Cuando, como en el presente caso, dicho derecho a contribución no existe, porque los daños originales fueron auto-infligidos por el propio demandante, opinamos que no procede imponer a la parte demandada la responsabilidad de pagar por daños en exceso de la proporción que ha sido realmente causada por ella.

Tampoco existe base para requerir que sea el demandado el que establezca qué proporción de los daños es atribuible a él. Esta medida, que parece justa cuando los daños han sido ocasionados por diversas causas ajenas a un demandante, no parece serlo cuando concurre la culpa del demandante. Cualquier responsabilidad impuesta al demandado en exceso de su culpa en dichos casos constituye un enriquecimiento injusto para el demandante quien estaría recibiendo compensación por daños ocasionados por él. Compárese, *Ramos v. Caparra Dairy Inc.,* 116 D.P.R. 60, a la pág. 64; *Soc. Gananciales v. Soc. Gananciales,* 109 D.P.R. 279, 282 (1979).

El Artículo 1802 del Código Civil establece que la imprudencia concurrente del perjudicado no exime de responsabilidad, pero acarrea la reducción de la indemnización. 31 L.P.R.A. 5141. *Miranda v. Estado Libre Asociado de P.R.,* **94 J.T.S. 152,** a la pág. 525. De igual forma, han de reducirse las compensaciones de los causahabientes, parientes o terceros del perjudicado. *Miranda v. Estado Libre Asociado de P.R.,* **94 J.T.S. 152,** a la pág. 528.

En la situación de autos, procede modificar la sentencia apelada a los fines de reducir la indemnización concedida para ajustarla a la proporción de los daños verdaderamente ocasionada por la negligencia del Dr. Gerena. Estos, según señalado, consisten en las angustias mentales y emocionales provocadas a los apelados por la dilación desde el 17 al 29 de marzo de 1990 en el diagnóstico y tratamiento de la lesión cervical del apelado Ramos Crespo.

Por los fundamentos antes expuestos, se modifica la sentencia apelada para reducir la indemnización por daños físicos y morales del apelado Ramos Crespo a la suma de $5,000.00, la de su esposa a $1,750.00 y la de sus progenitores a $500.00 a cada uno. Así modificada, se confirma.

Lo pronunció y manda el Tribunal y lo certifica la Señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General