*396 Opinión disidente emitida por la
Jueza Asociada Señora Pabón Chameco,
a la que se unen el Juez Asociado Se-ñor Rivera García y el Juez Asociado Señor Feliberti Cintrón.
Disiento respetuosamente de la Opinión mayoritaria. Esta lleva a cabo un cambio normativo de carácter regre-sivo en el campo de la responsabilidad civil extracontrac-tual al adoptar parcialmente la doctrina de las obligaciones in solidum. (1) De esta forma, la Opinión introduce un ter-tium genus entre las obligaciones mancomunadas y solida-rias que no reconoce nuestro ordenamiento(2) A su vez, descarta sin más una jurisprudencia consolidada con el fin de limitar el término prescriptivo para los cocausantes de un daño que no fueron traídos al pleito en la demanda original.
Ciertamente, en ocasiones, el acreedor del daño omite demandar a uno de los cocausantes por un periodo prolon-gado —a pesar de conocer su identidad— y durante el transcurso del pleito enmienda la demanda para incluirlo. Esta situación que en principio se ajusta a la letra de la ley, puede percibirse como un abuso en el ejercicio anormal del derecho cuando afecta la defensa de los cocausantes, así como la efectiva economía judicial. No cabe duda de que nuestro ordenamiento jurídico provee las herramientas para lidiar con las dificultades que este tipo de práctica pueda conllevar sin necesidad de acudir a una doctrina que no se ajusta a nuestro sistema.
*397 Examinemos brevemente los hechos que dieron génesis a la presente controversia.
I
El 2 de mayo de 2002, la parte recurrida (integrada por el Sr. Daniel Fraguada Bonilla, el Sr. Héctor L. Fraguada Pérez, la Sra. Ana Hilda Fraguada Pérez, la Sra. María de los Amgeles Fraguada Pérez, el Sr. Carlos Daniel Fraguada Pérez y el Sr. Ángel G. Osorio Fraguada) presentó una de-manda de daños y perjuicios contra el Hospital Auxilio Mutuo, el Dr. Manuel Anguita Alvarado y otros dos (2) galenos desconocidos. En síntesis, alegó negligencia en el trata-miento médico de la Sra. Hilda Pérez, quien falleciera el 1 de julio de 2000. Además, en la demanda hizo la salvedad de “[q]ue al momento de la presentación de esta demanda no se conoc[ían] todos los detalles relacionados a los hechos y la misma se radica [ba] con el propósito de interrumpir el término prescriptivo”.(3)
El 25 de octubre de 2006, el foro primario emitió una Sentencia Parcial por Estipulación Enmendada, mediante la cual aprobó la transacción y relevó de la reclamación al Hospital Auxilio Mutuo.(4) Así las cosas, en abril de 2008, la parte recurrida solicitó una autorización para enmendar la demanda e indicó que, como producto de su acción en la etapa investigativa de la prueba, surgió información de otros dos (2) doctores que fueron negligentes en el trata-miento de la señora Pérez. El 14 de abril de 2008 la parte recurrida enmendó la demanda para incluir como code-mandados al Dr. Octavio Mestre Morera (en adelante, doctor Mestre Morera o peticionario) y al Dr. Noel Totti.
Por su parte, el doctor Mestre Morera presentó, en su Contestación a la Demanda de 14 de abril de 2008, la de- *398 fensa afirmativa de prescripción el 10 de febrero de 2009. Particularmente, indicó:
La causa de acción que se intenta ejercer en contra del com-pareciente está prescrita. Nuestro ordenamiento vigente pro-mueve la diligencia en el ejercicio de los derechos y penaliza la incuria. La presentación de la demanda enmendada que nos ocupa para incluir al compareciente seis años después de la presentación de la demanda original denota una falta crasa de diligencia por la parte demandante. (Énfasis en original). Apéndice de la Petición de certiorari, pág. 84.
El 14 de abril de 2009, el peticionario presentó una Mo-ción Solicitando Sentencia Sumaria por el Fundamento de Prescripción. (5) En esta indicó que surgía de una deposi-ción tomada el 11 de junio de 2005 a la codemandante Ma-ría de los Angeles Fraguada que la parte recurrida conocía que el doctor Mestre Morera había intervenido en el trata-miento de la señora Pérez. Añadió que ya para esa fecha la parte recurrida contaba con un informe pericial al respecto.(6) Por lo tanto, solicitó la desestimación de la causa de acción ante la falta de diligencia de la parte de-mandante de ejercitar su acción, pues ya habían trascu-rrido tres (3) años desde que la parte demandante contaba con la información necesaria. Por otro lado, la parte recu-rrida indicó que la presentación de la demanda original había interrumpido el término prescriptivo en cuanto a los demás cocausantes solidarios y que estos podían ser inclui-dos al pleito mediante una demanda enmendada, en con-formidad con el derecho vigente. Esta solicitud fue decla-rada “no ha lugar” el 9 de julio de 2009.
Tras la presentación de una oportuna moción de recon-sideración que fuera declarada “sin lugar” por el tribunal de instancia, el peticionario instó un recurso de certiorari ante el Tribunal de Apelaciones. Este fue denegado.
*399 Inconforme, el peticionario recurre ante nos y señala el error siguiente:
Erró el Tribunal de Apelaciones al aplicar la doctrina de la solidaridad entre alegados cocausantes solidarios sin tomar en consideración el planteamiento de incuria argumentado por el compareciente para sostener que en el presente caso la parte demandante no debe beneficiarse de las condiciones liberales de la prescripción, considerando que los hechos por los cuales se le reclama al compareciente ocurrieron ocho años antes de la presentación de la demanda enmendada con la cual se le incluyó en el litigio y que conforme a la teoría cognoscitiva del daño la parte demandante contó con todos los elementos nece-sarios para reclamarle al Dr. Mestre Morera tres años antes de la radicación de la demanda enmendada [.] Petición de cer-tiorari, pág. 9.
II
A.
La responsabilidad civil extracontractual se cimenta esencialmente en el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141. Este artículo prescribe, en lo pertinente, que “[e]l que por acción u omisión causa daño a otro, intervi-niendo culpa o negligencia, está obligado a reparar el daño causado”.
A su vez, el Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298, dispone de un término prescriptivo de un (1) año para estas acciones. Este comienza a transcurrir cuando la parte perjudicada descubre o puede descubrir el daño, su causante, así como los elementos necesarios para poder ejercitar efectivamente su causa de acción.(7) Art. 1869 del *400 Código Civil, 31 L.P.R.A. sec. 5299. Véanse, además: COSSEC et al. v. González López et al., 179 D.P.R. 793, 806 (2010); Ojeda v. El Vocero de P.R., 137 D.P.R. 315, 325 (1994). Esto, pues el transcurso del tiempo conlleva la pér-dida del ejercicio de los derechos de forma que se evite la incertidumbre de las relaciones jurídicas y se castigue la inacción de los titulares en el ejercicio de sus derechos. García Pérez v. Corp. Serv. Mujer, 174 D.P.R. 138, 147 (2008). Por lo tanto, debe ser interrumpido en conformidad con el Art. 1873 del Código Civil, 31 L.P.R.A. sec. 5303.
A pesar de estas normas, constantemente se presentan nuevas cuestiones que requieren un mayor análisis e inter-pretación de estas para dar respuesta a las nuevas situa-ciones que continuamente surgen en ese campo. Una situa-ción frecuente es la pluralidad de posibles causantes de un daño cuyo régimen jurídico no está expresamente determi-nado en nuestro Código Civil. Esto, a su vez, genera múl-tiples dificultades sustantivas y procesales. Examinemos cómo hemos atendido las situaciones de pluralidad de res-ponsables del daño.
B.
Ante múltiples causantes de un daño mediando culpa o negligencia, no cabe duda de que cada uno está obligado a reparar el daño causado. Cubano v. Jiménez et al., 32 D.P.R. 167 (1923). No obstante, una de las dificultades que enfrentamos debido a las escuetas expresiones del Código Civil, sin que conlleve un obstáculo insuperable, es si la obligación de reparar el daño entre cocausantes es manco-mimada o solidaria. Nuestro Código —al igual que el Có-digo Civil español— no señala expresamente esta distin-ción, a diferencia de la mayor parte de los Códigos Civiles extranjeros.(8)
*401 Es conocido que las obligaciones con pluralidad de suje-tos pueden ser mancomunadas o solidarias. En principio, el Art. 1090 del Código Civil, 31 L.P.R.A. sec. 3101, dispone que ante la concurrencia de dos (2) o más deudores, o de dos (2) o más acreedores, la solidaridad no se presume, sino la mancomunidad. Es decir, el crédito o la deuda se presume divido en tantas partes iguales como acreedores o deudores haya, considerándose créditos o deudas distintos unos de otros cuando del texto de la obligación no resulta otra cosa. Art. 1091 del Código Civil, 31 L.P.R.A. see. 3102. Esto dado que la solidaridad entre los deudores agrava la carga que la deuda representa en cuanto es posible que uno de los deudores satisfaga su deuda y la ajena ante la insolvencia de los coobligados. Arroyo v. Hospital La Concepción, 130 D.P.R. 596, 602 (1992). Como explicaremos más adelante, ya hemos definido que el Art. 1090 del Código Civil, supra, aplica solo en el régimen contractual; in-terpretación que la opinión mayoritaria tampoco contra-dice.(9)
Por otro lado, se entiende por “obligación solidaria”
... aquella en la que concurren varios acreedores (solidaridad activa) o varios deudores (solidaridad pasiva), o varios acree-dores y al mismo tiempo varios deudores (solidaridad mixta), y en que cada acreedor tiene derecho a pedir, y cada deudor tiene la obligación o deber de realizar íntegramente, la pres-tación debida. Arroyo v. Hospital La Concepción, supra, pág. 600.
En los casos en que el deudor solidario pague la totali-dad de la prestación se extingue la obligación, pues el acreedor solo tiene derecho a recibirla una sola vez. No obstante, este podrá recobrar de los demás lo que ha pa-gado en exceso. Art. 1098 del Código Civil, 31 L.P.R.A. see. 3109. A contrario sensu, cuando el acreedor no logre cobrar *402 la deuda por completo mediante la reclamación entablada contra uno (1) o varios de los deudores, este podrá dirigirse posteriormente contra los restantes. Art. 1097 del Código Civil, 31 L.P.R.A. sec. 3108.
Con el pasar del tiempo y tras un cuidadoso análisis, hemos desarrollado una consolidada jurisprudencia en la que se precisa que el régimen jurídico en los casos de plu-ralidad de causantes de un daño indivisible es la solidaridad.(10) Arroyo v. Hospital La Concepción, supra, págs. 604-605. Véanse, además: García Pérez v. Corp. Serv. Mujer, supra; García v. Gobierno de la Capital, 72 D.P.R. 138, 145 (1951).
A pesar de expresiones previas en Cubano v. Jiménez et al., supra, y García v. Gobierno de la Capital, supra, fue en Arroyo v. Hospital La Concepción, supra, que aclaramos que la presunción de no solidaridad del Art. 1090, supra, no aplica en materia de responsabilidad extracontractual. Esto porque los razonamientos de la aplicabilidad de este artículo en el ámbito contractual son distintos. Al respecto, indicamos que “no es la voluntad de las partes la que crea la obligación, sino ella surge de una manera unilateral, en virtud de un acto realizado libremente por una persona en relación con otra; y la ley da eficacia y sanciona la obliga-ción natural de reparar los perjuicios invocados”. (Enfasis suprimido). Arroyo v. Hospital La Concepción, supra, pág. 602, citando a A. Borell Macía, Responsabilidades deriva-das de culpa extracontractual civil, 2da ed., Barcelona, Ed. Bosch, 1958, pág. 319. Además, en estos casos la obligación emana del propio Art. 1802 del Código Civil, supra, que requiere al obligado reparar el daño causado.(11) Es por ello que adoptamos la interpretación de la doctrina mayorita- *403 ria —y en ese entonces en la jurisprudencia española— en cuanto a que existe solidaridad legal al amparo del Art. 1802 cuando dos (2) o más causan un daño único e indivisible. Véase H.M. Brau, El término prescriptivo y su interrupción en acciones en daños por responsabilidad ex-tracontractual solidaria en el derecho puertorriqueño, 44 (Núm. 2) Rev. C. Abo. RR. 203, 204-205 (1983). De esta forma se aumenta la garantía del lesionado y se le protege con más eficacia, de forma que pueda recibir la reparación íntegra en caso de la insolvencia de cualquiera de los causantes.(12)
A tenor con estos principios, también establecimos que dicha “solidaridad legal” tiene las mismas consecuencias que en el ámbito contractual. Al adoptarse la solidaridad entre los corresponsables de un mismo daño, debe de ser con todos sus efectos, pues no se justifica en nuestro Código Civil distintos tipos de solidaridad. Arroyo v. Hospital La Concepción, supra, pág. 606. Véanse: J.J. Álvarez González, Responsabilidad civil extracontractual, 78 (Núm. 2) Rev. Jur. U.P.R. 457, 504-505 (2009); L.F. Reglero Campos, La prescripción de la acción de reclamación de daños, en tratado de responsabilidad civil, Ed. Aranzadi, 2008, T.I, pág. 1280; M. Albaladejo García, Interrupción o no de la prescripción frente a todos los deudores solidarios por re-clamación a uno solo: comentario a la Sentencia del Tribunal Supremo de 14 de marzo de 2003, Rev. Der. Priv. 553 (2003); A. Cristóbal Montes, Mancomunidad o solidaridad en la responsabilidad plural por acto ilícito civil, Barcelona, Ed. Bosch, 1985, pág. 42. Como parte de estos efectos, la interrupción de la prescripción contra uno perjudica a los demás en conformidad con el Art. 1874 del Código Civil, 31 L.P.R.A. sec. 5304. Rivera Otero v. Casco Sales Co., 115 D.P.R. 662 (1984). Específicamente, resolvimos que(13)
*404 ...la doctrina de la solidaridad [consagrada en García v. Gobierno de la Capital, supra,] permite traer a juicio instado a tiempo, a un [cocausante] solidario que originalmente no fue inclufijdo en el pleito ... a través de demanda contra tercero por parte del demandado origina [1 o] por enmienda a la de-manda por parte del demandante .... [Sé]lo se requiere alegar bien y suficientemente en la demanda — el hecho que el nuevo demandado, o tercero demandado, según los casos, responde solidariamente por los daños reclamados con el demandado original, contra quien se radicó demanda dentro del término prescriptivo dispuesto por el ordenamiento .... (Corchetes y énfasis en original). Arroyo v. Hospital La Concepción, supra, págs. 607-608, citando a H.M. Brau, op. cit., pág. 243. Véase, además, García Pérez v. Corp. Serv. Mujer, supra, pág. 155.
Al respecto, la Opinión mayoritaria reitera que “la no presunción de la solidaridad”, no aplica en materia de res-ponsabilidad extracontractual. (14) Sin embargo, elimina el tratamiento homogéneo de la solidaridad en conformidad con lo pautado por el propio Código Civil, o por lo menos parcialmente al adoptar dicha doctrina solo en cuanto a la prescripción. De esta forma crea unos efectos hasta enton-ces desconocidos por nuestro ordenamiento jurídico y que corresponde adoptar a la Asamblea Legislativa. Para ello, abraza la doctrina de las obligaciones in solidum, según explica, para “armoniza [r] la normativa cuando son varios los causantes de un daño extracontractual con la teoría cognoscitiva del daño y con la figura sustantiva de la pres-cripción a la vez que respetamos el mínimo de certidumbre concedido por el legislador para este tipo de relación”.(15) Por lo tanto, examinemos lo que esta doctrina sostiene.
C. Ante la regla general de que la solidaridad no se presume, la doctrina francesa ha desarrollado convenien-temente la doctrina de las obligaciones in solidum. Con ella se intenta justificar el que cada uno de los responsa- *405 bles esté obligado a pagar la totalidad de la deuda sin al-gunos de sus efectos, entre ellos, la prescripción, la oponi-bilidad de cosa juzgada frente a otros deudores y la apelación.(16) Para ello distingue entre dos (2) tipos de so-lidaridad en el ámbito de la solidaridad pasiva: la solidari-dad perfecta e imperfecta. Nuestro Código Civil no con-tiene estas distinciones. (17)
Para explicar esta distinción, la opinión mayoritaria toma prestada la definición de obligaciones in solidum que ofrece José Ricardo León Alonso. “La solidaridad es consi-derada perfecta cuando es ‘entre varias personas unidas por un interés común, que tienen entre sí relaciones fre-cuentes o se conocen’ ”, pero es “imperfecta cuando es esta-blecida mediante ley’ entre personas que no se conocen, que no son sino codeudores accidentales o cuando sus rela-ciones son esporádicas’ ”.(18) Véase J.R. León Alonso, La categoría de la obligación “in solidum”, Sevilla, Pubs, de la Universidad de Sevilla, 1978, págs. 32-33, citando a Mourlon, Répétitions écrites sur le Code Civil, Paris, T. III, 1896, núm 1.260.
Como claramente resume la Prof. Virginia Múrtula La-fuente, la doctrina de las obligaciones in solidum
...' se basa en que determinados casos de pluralidad de deudo-res, aunque cada uno de ellos responda por entero, su respon-sabilidad es autónoma de la de los otros, ya que el vínculo del que la misma deriva es un vínculo independiente, que ha na-cido por sí solo (parte, pues, del principio de equivalencia de *406 causas —todos aquellos que han participado en el hecho da-ñoso deben ser considerados autores del hecho — ). A diferencia de las obligaciones solidarias, donde cada deudor debe la misma prestación, en las obligaciones in solidum se adeuda idénticas prestaciones. Con ello se trata de evitar determina-das consecuencias propias de la solidaridad pasiva. Así, la parte lesionada para conservar su acción contra cada uno de los coautores, deberá de interrumpir la prescripción en rela-ción [con] cada uno de ellos; la sentencia que obtenga frente a uno no será oponible a los otros; y la apelación interpuesta por uno contra una sentencia común no aprovechará a los demás. No obstante, se le reconocen efectos comunes a la obligación solidaria: el acreedor puede reclamar la prestación íntegra-mente a cualquiera de los deudores y el pago realizado por uno de ellos libera a todos. V. Múrtula Lafuente, La responsabilidad civil por los daños causados por un miembro indetermi-nado de un grupo, Madrid, Ed. Dykinson, 2005, págs. 103-104.
Esta doctrina fue aceptada por la jurisprudencia española. Mediante la Sentencia de 14 de marzo de 2003, el Tribunal Supremo español examinó el recurso presentado. En ese caso, el demandante sufrió un grave accidente laboral mientras trabajaba en una obra de construcción. Este presentó demanda en la que reclamó una indemnización por el daño contra la empresa para la que trabajaba, el promotor de la obra y el arquitecto. No obstante, ya recaída la Sentencia y debido a la insolvencia de los condenados, formuló una nueva demanda contra el arquitecto técnico y dos (2) compañías aseguradoras. La demanda fue desestimada por prescripción. La Sentencia indicó que:
... la doctrina ha reconocido junto a la “ ‘solidaridad propia” ... otra modalidad de la solidaridad llamada “impropia” u obliga-ciones “in solidum” que dimanan de la naturaleza del ilícito y de la pluralidad de sujetos que hayan concurrido a su produc-ción, y que surge cuando no resulta posible individualizar las respectivas responsabilidades. A esta última especie de solida-ridad no son aplicables todas las reglas prevenidas para la solidaridad propia, y en especial no cabe que se tome en con-sideración el art. 1.974 del Código civil en su párrafo prime-ro ....
*407 [Al hacer referencia a la sentencia de 21 de octubre de 2002, añade que] la fuente de donde nace la solidaridad ... es la sentencia, y que no existe con anterioridad(19) S. de 14 de marzo de 2003, Núm. 223/2003.
No obstante, la doctrina continúa descartando las obli-gaciones in solidum, pues el ordenamiento jurídico divide a las obligaciones con pluralidad de sujetos en mancomuna-das y solidarias, y en vista de ello establece su régimen jurídico. Véanse: Múrtula Lafuente, op. cit., pág. 104; M. Martín-Casals y J. Solé, Multiple Tortfeasors under Spanish Law, en W.V.H. Rogers, Unification of Tort Law: Multiple Tortfeasors, The Hague, Ed. Kluwer Law International, 2004, pág. 193.
Ill
El que la doctrina de las obligaciones in solidum haya sido adoptada en España no desmerece el que nuestro or-denamiento reconozca solamente un tipo de solidaridad. En vista de ello, todavía son válidas y correctas las razones por las que interpretamos que las obligaciones surgidas por el daño causado por una pluralidad de causantes es solidaria, con todos los efectos que la solidaridad conlleva. En esencia, no se introducen distinciones que no encuen-tran justificación en el Código Civil, se aumenta la garan-tía del lesionado para que reciba la reparación íntegra de su daño y se abona a la efectiva economía judicial. De igual forma, al incluir mediante una demanda enmendada a un codeudor no traído al pleito originalmente se mejora la po-sición del cocausante solidario a quien podría dificultársele su defensa por el transcurso del tiempo. Sin embargo, esto *408 no elimina una inquietud de considerable importancia: ¿es que no existe límite temporal para que el acreedor incluya mediante una demanda enmendada a un cocausante del daño del que conoce su identidad, así como todos los ele-mentos necesarios para poder ejercitar efectivamente la causa de acción?
Ciertamente, es urna prerrogativa del acreedor presen-tar una demanda contra uno o todos los cocausantes, ya sea según nuestro ordenamiento jurídico vigente o según la propuesta doctrina de obligaciones in solidum. El Art. 1097 del Código Civil, supra, expresa que
[e]l acreedor puede dirigirse contra cualquiera de los deudo-res solidarios o contra todos ellos simultáneamente. Las recla-maciones entabladas contra uno no serán obstáculo para las que posteriormente se dirijan contra los demás, mientras no resulte cobrada la deuda por completo.
De este artículo se deducen las opciones para que el acreedor dirija su acción: (1) contra todos los codeudores, (2) contra algunos de ellos, (3) contra uno solo o (4) contra uno y después contra otros hasta que cobre la totalidad de la deuda, pues soío el pago de la deuda en su totalidad libera a todos los codeudores. Art. 1098 del Código Civil, supra. Además, hemos reconocido que la doctrina de soli-daridad permite también traer a un pleito instado a tiempo a un cocausante que originalmente no fue incluido a través de una enmienda a la demanda. Arroyo v. Hospital La Concepción, supra, págs. 607 — 608. Sin embargo, este derecho no es absoluto ni ilimitado.
Al respecto, Luis Puig y Ferriol nos ilustra con las ex-presiones siguientes:
[H]a de pensarse que son posibles en el sistema del Código las sucesivas reclamaciones judiciales en tanto el interés del acreedor no haya quedado enteramente satisfecho, y sin que, por otra parte, se imponga al acreedor notificar a los codeudo-res los distintos procedimientos que entable, lo cual quizás pudiera constituir una medida de sana prudencia, con el fin de evitar gastos inútiles. En todo caso cabe conjurar algunos de *409 estos inconvenientes conjugando este “ius variandi” del acree-dor ex artículo 1.144 C. c. con el principio de la buena fe (cfr. Arts. 7-1 y 1.258 C. c.) y con la condena del abuso del derecho (art. 7-2 C. c.),(20) como quizás se daría en el caso de sucesivos litigios instados por el acreedor con el único fin de acumular gastos judiciales o eventuales condenas en costas. (Enfasis suplido). L. Puig y Ferriol, Régimen jurídico de la solidaridad de deudores, en Libro-homenaje a Ramón Ma. Roca Sastre, Madrid, Gráficas Cóndor, 1976, Vol. II, pág. 457.
De igual forma, en Puerto Rico hemos reconocido el principio de que los derechos deben ejercitarse conforme a las exigencias de la buena fe. Soriano Tavárez v. Rivera Anaya, 108 D.P.R. 663, 670 (1979). Asimismo, hemos indi-cado que la ley no ampara el abuso del derecho o su ejer-cicio antisocial. Id. Es decir, el ejercicio de todo derecho debe ser razonable sin que conlleve la ruptura de la orde-nada convivencia social, ya sea en su vertiente subjetiva (por el ejercicio del derecho con la intención de dañar o sin verdadero interés) u objetiva (cuando el titular excede ma-nifiestamente los límites impuestos por la buena fe o por el fin social o económico de ese derecho). íd., págs. 670-671. Véase, además, J. Roca, Art. 7.2 en Comentarios a las re-formas del código civil: el nuevo título preliminar y la Ley de 2 de mayo de 1975, Madrid, Ed. Tecnos, Vol. I, pág. 375. Además, el comportamiento conforme a la buena fe es pre-cepto general que abarca toda actividad jurídica y se ex-tiende a la totalidad del ordenamiento jurídico. Velilla v. Pueblo Supermarkets, Inc., 111 D.P.R. 585 (1981). Por lo
*410 tanto, nuestro ordenamiento provee vías para sancionar la diligencia y evitar conductas excesivas. Una de ellas es el principio del abuso del derecho.(21)
El fin social y económico de autorizar las enmiendas a la Demanda es proveer mayores garantías para que la persona afectada obtenga la reparación de todo el daño cau-sado, así como propender a una eficiente economía judicial. No obstante, la víctima tiene que ejercitarlo de forma ra-zonable y justa, y no despreocupada. Por lo tanto, de en-tenderse que hubo abuso del derecho por el juzgador, debe admitirse la adopción de medidas judiciales, tales como la desestimación de la demanda en cuanto a ese codeudor.(22) En estos casos, el exceso se traduce en afectar el equilibrio entre todos los intereses, particularmente la defensa de los demandados, así como la economía procesal; razones por las que hemos concluido que aplica el régimen jurídico de la solidaridad con todos sus efectos a este tipo de casos. Por lo tanto, no existe el tan aclamado “derecho eterno” que la Opinión mayoritaria comenta. A contrario sensu, podemos considerar abusivo cuando ya presentada la demanda el acreedor la enmienda para incluir a un cocausante pasado un término irrazonable desde que tuvo conocimiento de su identidad y otros elementos necesarios. Esto salvo cuando la tardanza surge de acciones u omisiones atribuibles al cocausante. Al respecto, la Asamblea Legislativa ya ha de-terminado como razonable el término de un año. Sin em *411 bargo, corresponde al codeudor alegar tal abuso del dere-cho y señalar los hechos de los que se deduce.
Cónsono con lo anterior, el que una doctrina esté conso-lidada no elimina el que pueda ser mejorada o que res-ponda más eficientemente a los retos de una sociedad cambiante. Nuestro ordenamiento jurídico provee la clari-dad y seguridad necesaria para atender las consecuencias de una obligación surgida por múltiples causantes de un daño. Por lo tanto, no tenemos que recurrir a confecciones de otras jurisdicciones. Hacer distinciones que el Código Civil no provee, tales como reconocer la existencia de dos (2) tipos de obligaciones solidarias —perfectas e imperfec-tas— para poder seleccionar entre unos efectos y descartar otros, en nada contribuye a la seguridad jurídica de las partes. Por lo tanto, no nos podemos amparar en la idea de que se alcanza la armonía del ordenamiento jurídico a tra-vés de la introducción parcial de una figura que no es re-conocida en este.
IV
En el caso de autos la parte recurrida interrumpió el término prescriptivo de un (1) año mediante reclamación judicial. A su vez, hizo la salvedad de que al momento no conocía todos los detalles relacionados a los hechos. Por ello, demandó también a dos (2) galenos desconocidos. Sin embargo, durante el transcurso del proceso tuvo conoci-miento de los nombres de otros doctores que intervinieron con la Sra. Hilda Pérez, entre ellos el doctor Mestre Mo-rera, y un informe pericial que imputaba faltas en el diag-nóstico y tratamiento que ofrecieron. Empero, transcurrie-ron más de tres (3) años desde que la parte recurrida tuvo conocimiento de todos los elementos y trajo al pleito al doctor Mestre Morera. Por otra parte, el peticionario alegó y justificó ante el foro de instancia el exceso incurrido por la parte recurrida. Cónsono con lo expresado, la tardanza de *412 la parte recurrida es excesiva y no es acorde con la finali-dad de autorizar las enmiendas a la Demanda. Tampoco puede atribuirse esta tardanza a las acciones u omisiones del peticionario.
V
Por los argumentos antes expresados, disiento de la Opinión mayoritaria. En cambio, exhortaría a las víctimas de un daño a presentar prontamente su acción contra aquellos causantes tras conocer su identidad, si es su inte-rés tener mayores garantías de obtener una indemnización completa. De otra forma corre el riesgo de que se considere su omisión como una actitud abusiva hacia el causante.

 La opinión mayoritaria adopta la doctrina de las obligaciones in solidum “solo respecto a la interrupción del término prescriptivo cuando coinciden varios cocausantes del daño al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141”. Opinión mayoritaria, pág. 389 esc. 13.

 V. Múrtula Lafuente, La responsabilidad civil por los daños causados por un miembro indeterminado de un grupo, Madrid, Ed. Dykinson, 2005, págs. 103-104; A. Cristóbal Montes, Mancomunidad o solidaridad en la responsabilidad plural por acto ilícito civil, Barcelona, Ed. Bosch, 1985, pág. 41.

 Apéndice de la Petición de certiorari, pág. 50.

 Íd., pág. 64.

 Íd., págs. 85-94.

 Íd., págs. 99-101.

 “No es necesario que el perjudicado conozca en ese momento toda la magni-tud y extensión de las consecuencias lesivas de las lesiones corporales, ya que tal extremo se puede establecer en un momento posterior . . .”. Vera v. Dr. Bravo, 161 D.P.R. 308, 330 (2004). Sin embargo, dado que la prescripción extintiva castiga la indolencia de la parte, si el desconocimiento se debe a la falta de diligencia del reclamante, entonces no aplican las consideraciones sobre la prescripción. COSSEC et al. v. González López et al., 179 D.P.R. 793, 806 (2010).

 Para una relación sucinta, véanse: J. Santos Briz, La responsabilidad por hecho de otro derivada de acto ilícito no penal, en Tratado de responsabilidad civil *401 (I. Sierra Gil de la Cuesta, cord.), Barcelona, Ed. Bosch, 2008, T. II, pág. 670; J.J. Álvarez González, Responsabilidad civil extracontractual, 78 (Núm. 2) Rev. Jur. U.P.R. 457, 478 (2009).

 Opinión mayoritaria, pág. 389 esc. 13.

 Esta jurisprudencia está apoyada también por la doctrina prevaleciente. M. Martín-Casals y J. Solé, Multiple Tortfeasors under Spanish Law en W.V.H. Rogers, Unification of Tort Law: Multiple Tortfeasors, The Hague, Ed. Kluwer Law International, 2004, pág. 189.

 “Las normas legales ordenadoras de la solidaridad han de ser sometidas, como es lógico, a interpretación”. L. Diez-Picazo, Fundamentos del Derecho Civil patrimonial, 6ta ed., Madrid, Ed. Thompson, 2008, Vol. II, pág. 200.

 Al respecto, hemos reconocido el debate doctrinal. Arroyo v. Hospital La Concepción, 130 D.P.R. 596 (1992).

 Esto tras examinar las doctrinas francesa, alemana, italiana y españolas en cuanto a la prescripción en estos supuestos.

 Opinión mayoritaria, pág. 389 esc. 13.

 Opinión mayoritaria, pág. 391.

 Álvarez González, supra, págs. 478 y 504 esc. 206.

 Como reconoce José Ricardo León Alonso, uno de los defensores de la doc-trina de las obligaciones in solidum:
“[e]n nuestro Derecho ... la obligación in solidum no cuenta ni con una base doctrinal en que asentarse, ni con una específica normativa de donde partir; por ello, será conveniente el estudio sucesivo de la posible ubicación de la obligación in soli-dum en el articulado o en el espíritu de nuestro C.c., el deslinde terminológico de figuras particularmente afines y, desde luego, el recorrido por el oscuro panorama doctrinal”. J.R. León Alonso, La categoría de la obligación “in solidum”, Sevilla, Pubs, de la Universidad de Sevilla, 1978, pág. 27.

 Opinión mayoritaria, pág. 380.

 Al respecto, la opinión mayoritaria acoge que “la solidaridad imperfecta no nace de un vínculo prexistente, sino del acto ilícito productor del daño según recono-cido por la sentencia que lo declare así”. Opinión mayoritaria, pág. 389 esc. 14. Esta postura es altamente criticada. Véase M. Albaladejo García, Interrupción o no de la prescripción frente a todos los deudores solidarios por reclamación a uno solo: comen-tario a la Sentencia del Tribunal Supremo de 14 de marzo de 2003, Rev. Der. Priv. 543, 554 (2003).

 Luego de considerar la doctrina y la aplicación de la jurisprudencia, el le-gislador español incorporó el abuso del Derecho al Código Civil mediante una re-forma del título preliminar de 1973-1974. El apartado 2 del Art. 7 del Código Civil español indica lo siguiente:
“1. Los derechos deberán ejercitarse conforme a las exigencias de la buena fe.
“2. La ley no ampara el abuso del derecho o el ejercicio antisocial del mismo. Todo acto u omisión que por la intención de su autor, por su objeto o por las circuns-tancias en que se realice sobrepase manifiestamente los límites normales del ejerci-cio de un derecho, con daño para tercero, dará lugar a la correspondiente indemni-zación y a la adopción de las medidas judiciales o administrativas que impidan la persistencia en el abuso”. Código Civil, 8va ed., Madrid, Ed. Civitas, 1984, Art. 7, pág. 54.
En Puerto Rico no contamos con una disposición idéntica en el Código Civil.

 De igual forma, también hemos reconocido la Doctrina de Incuria para des-estimar acciones en las que se presenta dejadez o negligencia en el reclamo de un derecho. Para ello no basta el mero transcurso del tiempo sino que hay que evaluar otras circunstancias, entre ellas la justificación para la demora, el peijuicio que acarrea y el efecto sobre los intereses involucrados. Véanse: Rivera v. Depto. de Servicios Sociales, 132 D.P.R. 240 (1992); Aponte v. Srio. de Hacienda, E.L.A., 125 D.P.R. 610 (1990). Sin embargo, consideramos suficiente la protección que provee el princi-pio de abuso del derecho y que se enmarca dentro de la tradición civilista.

 Sin embargo, hemos señalado que el contenido de eticidad de cada acto debe examinarse a la luz de sus circunstancias particulares. Velilla v. Pueblo Supermarkets, Inc., 111 D.P.R. 585 (1981). Véase, además, C. Lasarte Álvarez, Principios de Derecho Civil, Madrid, Ed. Trivium, 1992, T. 1, pág. 171.